## WILKINS v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. September 21, 1899.)

Nos. 1 and 2, March Term, 1899.

1. CRIMINAL LAW—OFFENSES AGAINST UNITED STATES.

While criminal offenses against the United States are wholly statutory, and indictments therefor must find their warrant in the provision of some statute, the fact that an act of congress creating an offense—such as the defacement or removal of revenue stamps or marks or brands—delegates to an administrative department of the government the duty of designing and preparing such stamps or prescribing such marks and brands, and making regulations governing their use, does not render their removal or defacement, when used in accordance with such regulations, any the less a statutory offense.

2. INDICTMENT—PLEADING DEPARTMENTAL REGULATIONS.

Regulations made by an executive department in pursuance of authority delegated by congress have the force of law, and the courts will take judicial notice of their existence and provisions; hence an indictment charging a violation of such a regulation, which is made an offense by statute, need not set out such regulation, but is sufficient if it avers that an act done in pursuance of such regulation was done under the requirements of law.

3. SAME—SUFFICIENCY—REMOVING BRANDS FROM OLEOMARGARINE.

The act of August 2, 1886 (24 Stat. c. 840), imposing a tax upon oleomargarine, and regulating its manufacture, sale, importation, and exportation, requires all oleomargarine to be put up in prescribed packages, and marked, stamped, and branded as the commissioner of internal revenue, with the approval of the secretary of the treasury, shall prescribe. It also makes it a criminal offense for any person to "willfully remove or deface the stamps, marks or brands on packages containing oleomargarine taxed as provided herein." In pursuance of the authority so given, regulations were made by the commissioner prescribing the marks and brands to be used on such packages, and the manner of their use. *Held*, that an indictment charging that a person, at a place and time stated, did "knowingly, willfully, unlawfully, and fraudulently remove a certain brand from a certain package then and there containing oleomargarine, to wit, sixty pounds of oleomargarine, to wit, the word 'Oleomargarine,' which was then and there required, and was then and there, under the requirements of law, branded upon the aforesaid package, then and there containing oleomargarine as aforesaid, contrary," etc., sufficiently charged an offense under the statute.

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

A. A. Hoehling, Jr., and J. M. Wilson, for plaintiff in error.

James M. Beck, U. S. Atty., and Michael F. McCullen, Asst. U. S. Atty.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

BÜFFINGTON, District Judge.    This is a writ of error sued out
by the defendant to review the case of U. S. v. Wilkins in the district
court for the Eastern district of Pennsylvania.    When the case was
called for trial, defendant's demurrer to the indictment was over-
ruled, and thereafter he was convicted, and sentence imposed.    The
overruling of such demurrer is here assigned for error.

We will first examine the third count, for, if it is sustained, sen-
tence was lawfully imposed.    By section 6 of an act of congress ap-
proved August 2, 1886, entitled "An act defining butter, also impos-
ing a tax upon and regulating the manufacture, sale, importation,
and exportation of oleomargarine," it is provided "that all oleomarga-
rine shall be packed by the manufacturer thereof in firkins, tubs, or
other wooden packages not before used for that purpose, each con-
taining not less than ten pounds, and marked, stamped, and branded
as the commissioner of internal revenue with the approval of the
secretary of the treasury, shall prescribe;  and all sales made by
manufacturers of oleomargarine and wholesale dealers in oleomarga-
rine shall be in original stamped packages";  and by section 15 that
"any person who shall wilfully remove or deface the stamps, marks,
or brands on packages containing oleomargarine taxed as provided
herein shall be guilty of a misdemeanor, and shall be punished by a
fine of not less than one hundred dollars or more than two thousand
dollars, and by imprisonment for not less than thirty days nor more
than six months."    In pursuance of the authority thereto enabling,
the following regulation was, by the commissioner of internal reve-
nue, with the approval of the secretary of the treasury, duly made and
promulgated on June 18, 1895, to wit:

"Every package of oleomargarine must, before removal from the manufac-
tory, be branded or stenciled as follows:                                '

" 'Oleomargarine.
" 'Factory No.                        District.'

"The letters and figures in the above brand must be of the following dimen-
sions:  The letters in the word 'Oleomargarine' must be not less than three-
quarters of an inch in length, and all other letters and figures not less than one-
half an inch in length."

### The third count was as follows:

"And the grand inquest aforesaid, inquiring as aforesaid, upon their re-
spective oaths and affirmations as aforesaid, do further present that after-
wards, to wit, upon the day and year aforesaid, the said Joseph Wilkins, late
of the district aforesaid, yeoman at the district aforesaid, and within the juris-
diction of this court, did, at, to wit, pier No. 24, South Delaware avenue, in the
city of Philadelphia, and district aforesaid, knowingly, willfully, unlawfully,
and fraudulently remove a certain brand from a certain package then and
there containing oleomargarine, to wit, sixty pounds of oleomargarine, to wit,
the word 'Oleomargarine,' which was then and there required, and was then
and there, under the requirements of law, branded upon the aforesaid package
then and there containing oleomargarine as aforesaid;  contrary to the form of
the act of congress in such case made and provided, and against the peace and
dignity of the United States of America."

For cause of demurrer thereto the defendant maintained "that the
same did not state facts sufficient to constitute any offense against
the United States, and that the same was insufficient in law."    Was

such objection well grounded? That federal criminal offenses are wholly statutory, and that, therefore, indictments must have legislative warrant, is clear (U. S. v. Hudson, 7 Cranch, 32; U. S. v. Coolidge, 1 Wheat. 415; U. S. v. Britton, 108 U. S. 199, 2 Sup. Ct. 531; Manchester v. Massachusetts, 139 U. S. 240, 11 Sup. Ct. 559; U. S. v. Eaton, 144 U. S. 679, 12 Sup. Ct. 764); and, moreover, that such indictment should, first, fully apprise the defendant of the charge against him, and, secondly, be such as to shield him, by plea of autrefois acquit or convict, if prosecuted a second time. That by this indictment the defendant was fully apprised of the charge against him is manifest. The brand he was charged with removing was specifically set forth as the word "Oleomargarine"; it was on a certain package; that package contained a certain article, viz. oleomargarine, and a definite quantity, to wit, 60 pounds; the removal was at a specified place, to wit, "pier No. 24, South Delaware avenue, in the city of Philadelphia," and on a certain day, to wit, "December 20, 1896." These averments gave the defendant notice of the acts with the committing of which he was charged. And the designation of time, place, article, and act were of such specific character as to avail to protect him if he should again be called to face a charge of removing the word "Oleomargarine" from a 60-pound package of oleomargarine on December 20, 1896, at pier No. 24, South Delaware avenue, Philadelphia. The defendant, therefore, being fully apprised of the charge, and the offense so specified as to shield him if charged therewith a second time, the count must be sustained, unless it fails to set forth and charge a statutory crime. The indictment charges that the defendant knowingly, willfully, unlawfully, and fraudulently removed from a package of oleomargarine a brand, viz. "the word 'Oleomargarine,' which was required, and under the requirements of law was branded thereon." Is such an act contrary to federal law? Is it a statutory crime? It will be noted that the elements of the crime are specified by the act of congress, "any person who shall willfully remove or deface the stamps, marks or brands on packages containing oleomargarine taxed as provided herein." The elements of the crime are defined by the statute. The legislation is complete and self-sustaining as to what constitutes the crime, to wit, the removal or defacing of a stamp, mark, or brand. It is true the particular character of the marks or brands evidencing payment of the tax or authentication of the commodity are not fixed by the act, but this is a matter of executive detail in the enforcement of this revenue act, rather than of legislative action, and by the act itself such detail is confided to the executive branch, just as the particular die of our coinage, the form and style of our postage and revenue stamps, legal tender notes and bonds are not determined by congress, but are left to the respective departments. By section 6 oleomargarine shall be placed in packages, "stamped and branded as the commissioner of internal revenue, with the approval of the secretary of the treasury, shall prescribe." It would seem, therefore, that these regulations do not create the crime; the crime is not the result of them, but the most that can be said of them is that they call into being the evidence or indicia which render possible a commission of crime. In Prather v.

U. S., 9 App. Cas. D. C. 89, regulations made under this section were considered by the court of appeals of the District of Columbia. It was there said:

"The provision of the statute now before us for consideration is that the commissioner of internal revenue, with the approval of the secretary of the treasury, shall provide and furnish to the dealers a mark or brand, which does not differ in principle from a stamp, without which oleomargarine is not to be sold, and which will evidence that the tax upon it has been paid; and that any person who knowingly offers for sale any oleomargarine in any other form than in new wooden or paper packages, with the mark or brand so to be furnished by the commissioner, shall be liable to a prescribed penalty. This is no more than providing that no oleomargarine shall be sold except in packages duly branded, so as to show that the tax upon it has been paid. The brand is no more than a receipt furnished by the commissioner, or an evidence of payment given by him to the dealer. We fail to see, therefore, how the requirement of a mark or brand by the commissioner is a delegation of legislative power to that officer, any more than would be a requirement that he should give a receipt in writing that the tax had been paid."

In that case, it is to be noted, the defendant was charged with selling unstamped packages; therefore the absence of the prescribed stamp was an essential element,—one necessary to the commission of the crime. The court, however, held:

"We do not think that the criminal liability in the present instance is the creation or result of departmental or official regulation. It seems rather to fall into the category of offenses indicated in the case of Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, in which congress has fully declared the offense, and the departmental regulation has merely afforded the opportunity for its commission."

This is in accordance with the views expressed by the supreme court. In Re Kollock, 165 U. S. 533, 17 Sup. Ct. 446, that court stated the relation of these regulations to the crimes defined by this statute. It was there said:

"We agree that the courts of the United States, in determining what constitutes an offense against the United States, must resort to the statutes of the United States, enacted in pursuance of the constitution. But here the law required the packages to be marked and branded, prohibited the sale of packages that were not, and prescribed the punishment for sales in violation of its provisions; while the regulations simply described the particular marks, stamps, and brands to be used. The criminal offense is fully and completely defined by the act, and the designation by the commissioner of the particular marks and brands to be used was a mere matter of detail. The regulation was in execution of, or supplementary to, but not in conflict with, the law itself, and was specifically authorized in effectuation of the legislation which created the offense. We think the act not open to the objection urged, and that it is disposed of by previous decisions. U. S. v. Bailey, 9 Pet. 238; U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764; Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513. * * * The act before us is, on its face, an act for levying taxes; and although it may operate, in so doing, to prevent deception in the sale of oleomargarine as and for butter, its primary object must be assumed to be the raising of revenue. And, considered as a revenue act, the designation of the stamps, marks, and brands is merely in the discharge of an administrative function, and falls within the numerous instances of regulation needful to the operation of the machinery of particular laws, authority to make which has always been recognized as within the competency of the legislative power to confer. U. S. v. Symonds, 120 U. S. 46, 7 Sup. Ct. 411; Ex parte Reed, 100 U. S. 13; Smith v. Whitney, 116 U. S. 167, 6 Sup. Ct. 570; Weyman v. Southard, 10 Wheat. 1. * * * We concur with the court of appeals that this provision does not differ in principle from those of the internal revenue laws,

which direct the commissioner of internal revenue to prepare suitable stamps to be used on packages of cigars, tobacco, and spirits, to change such stamps when deemed expedient, and to devise and regulate the means for affixing them. Rev. St. §§ 3312, 3395, 3445, 3446, et seq."

The making of such regulations being, then, an executive act, we next inquire whether, when made, they have the force of law, and whether the courts take judicial notice of their existence. That such is the case the authorities show. In U. S. v. Eaton, 144 U. S. 688, 12 Sup. Ct. 767, it was held that rules and regulations duly prescribed had the force of law.

"Regulations prescribed by the president and by heads of departments, under authority granted by congress, may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in proper sense, the force of law."

And in Caha v. U. S., 152 U. S. 221, 14 Sup. Ct. 513, it was held the court took judicial notice of them.

"The rules and regulations prescribed by the interior department in respect to contests before the land office were not formally offered in evidence, and it is claimed that this omission is fatal, and that a verdict should have been instructed for the defendant. But we are of opinion that there was no necessity for a formal introduction in evidence of such rules and regulations. They are matters of which the courts of the United States take judicial notice. Questions of a kindred nature have been frequently presented, and it may be laid down as a general rule, deducible from the cases, that wherever, by the express language of any act of congress, power is intrusted to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which the public is interested, and in respect to which they have a right to participate, and by which they are to be controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice. Without attempting to notice all the cases bearing upon the general question of judicial notice, we may refer to the following: U. S. v. Teschmaker, 22 How. 392, 405; Romero v. U. S., 1 Wall. 721; Armstrong v. U. S., 13 Wall. 154; Jones v. U. S., 137 U. S. 202, 11 Sup. Ct. 80; Knight v. Association, 142 U. S. 161, 169, 12 Sup. Ct. 258; Jenkins v. Collard, 145 U. S. 546, 12 Sup. Ct. 868."

The regulation of the commissioner—of which, we have seen, courts take judicial notice—required the brand specified in the indictment to be placed on the package, and the allegation in the indictment is that the particular brand in question was one branded thereon in pursuance of the requirements of law. It follows, therefore, that the statute defining the crime, the regulation made, and the allegation in the indictment that the brand was one required by law, unite to show that the defendant was charged with the commission of an act "in violation of a public law forbidding it," and this Blackstone (4 Bl. Comm. p. 5) defines to be a crime. While the careful pleader, out of abundance of caution, might specifically recite such regulations, as we find from an examination of the indictment was done in U. S. v. Ford, 50 Fed. 467, yet the omission to plead that of which courts take judicial notice should not render the indictment so meaningless as to justify the present ground of demurrer, viz. "that the same did not state facts sufficient to constitute any offense against the United States." After mature consideration we are of opinion a statutory crime was charged in the third count, and that no error was committed in overruling the demurrer thereto. This

view renders needless a discussion of the first and fourth counts. The record will be remitted to the district court, with directions to enforce the sentence imposed.