## UNITED STATES v. HOOVER.

(District Court, D. Nebraska.    December 27, 1904.)

No. 503.

1. ANIMALS—TRANSPORTATION—INFECTIOUS DISEASES—DEPARTMENT OF AGRI-
CULTURE—RULES.

Act Cong. May 29, 1884, c. 60 (23 Stat. 31 [U. S. Comp. St. 1901, p. 299]),
providing for the regulation of the animal industry, and prohibiting the
exportation of diseased animals out of quarantined districts, etc., being
limited to cases where the animal in question was affected with an in-
fectious or contagious disease, the Secretary of Agriculture had no au-
thority to extend the same by a rule prohibiting the taking of any horse
outside of a quarantine district without first having it inspected by the
bureau of animal industry, etc., regardless of whether it was diseased
or had been exposed thereto.

2. SAME.

Act Cong. June 3, 1902, c. 985 (32 Stat. 289), authorizing the Secretary
of Agriculture to apply any part of an appropriation to the general ex-
penses of the bureau of animal industry in the purchase and destruction
of diseased and exposed animals, and to the quarantine thereof, whenever
in his judgment it is essential to prevent the spread of pleuropneumonia,
tuberculosis, or other diseases of animals from one state to another,
limited the power of the Secretary in these regards to diseased or exposed
animals, and gave him no jurisdiction over animals not affected with or
exposed to an infectious or contagious disease.

3. SAME.

Act Cong. Feb. 2, 1903, c. 349 (32 Stat. 791, pt. 1 [U. S. Comp. St.
Supp. 1903, p. 372]), transferred certain powers vested in the Secretary
of the Treasury by Act Cong. May 29, 1884, c. 60, §§ 4, 5 (23 Stat. 32),
relating to the importation of animals from foreign countries, to the
Secretary of Agriculture.  It also provided that animals inspected by the
bureau of animal industry and certified to be free from disease might be
shipped from one state to another without further inspection, and au-
thorized the Secretary of Agriculture from time to time to establish rules
and regulations concerning the exportation and transportation of live
stock from any place within the United States where he may have reason
to believe certain diseases exist, and that such rules and regulations shall
have the force of law.  *Held*, that such act does not prohibit the shipment
of animals free from disease, and that the Secretary of Agriculture had
no power thereunder to make rules and regulations with reference to
such animals, the violation of which alone would constitute a crime.

4. SAME—PROSPECTIVE OPERATION.

Act Feb. 2, 1903, c. 349 (32 Stat. 791, pt. 1 [U. S. Comp. St. Supp. 1903,
p. 372]), providing for the inspection of diseased animals, etc., declares
that any person knowingly violating its provisions or the orders or regu-
lations made in pursuance thereof shall be guilty of a misdemeanor, etc.
*Held*, that such provision affected only rules and regulations made there-
after, and did not have the retroactive effect of giving validity to a prior
void order.

Irving F. Baxter, U. S. Atty., and S. R. Rush, Asst. U. S. Atty.
(Geo. P. McCabe, of counsel), for the United States.

A. W. Jefferis and F. S. Howell, for defendant.

MUNGER, District Judge (orally).   The government having closed
its offer of testimony and rested its case, the defendant now moves the
court to direct a verdict of not guilty, for the reason that no offense is
alleged or proven.

The information in this case was filed by the United States district attorney, by leave of court, and charges the defendant with having, on October 15, 1903, driven a mare and colt from the Pine Ridge Indian reservation, a quarantined district within the state of South Dakota, into Holt county, in the state of Nebraska, without the quarantined district, in violation of a rule or regulation issued by the Secretary of Agriculture, under date of January 20, 1903, known as "Order No. 102," which prohibited the taking of any horse without the quarantined district without first having such horse inspected by an inspector of the bureau of animal industry and be accompanied by a certificate of inspection issued by said inspector.

The order of the Secretary recites that it is issued in accordance with the act of Congress approved May 29, 1884, c. 60 (23 Stat. 31 [U. S. Comp. St. 1901, p. 299]), entitled "An act for the establishment of a bureau of animal industry, to prevent the exportation of diseased cattle and to provide means for the suppression and extirpation of pleuropneumonia and other contagious diseases among domestic animals," and with the act of Congress approved June 3, 1902, c. 985 (32 Stat. 289), making appropriations for the fiscal year ending June 30, 1903.

It is not charged in the information that the mare and colt in question were infected with any disease, or had been exposed to an infectious disease, nor is there any evidence that either of them were infected with or had been exposed to any disease. The prosecution is based solely upon the proposition that it is a criminal offense to transport any animal out of the quarantined district, without reference to whether such animal is diseased or has been exposed to an infectious disease, without first obtaining the certificate required by said order of the Secretary of Agriculture.

The act of May 29, 1884, was analyzed and construed by the Supreme Court in Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108, wherein it was said by the court, speaking with reference to interstate commerce:

"Congress went no farther than to make it an offense against the United States for any one knowingly to take or send from one state or territory to another state or territory, or into the District of Columbia, or from the District of Columbia into any state, live stock affected with infectious or communicable disease. The animal industry act did not make it an offense against the United States to send from one state to another live stock which the shipper did not know were diseased."

The act of Congress, then, being limited to cases where the animal was affected with an infectious or communicable disease, it was not within the power or authority of the Secretary of Agriculture to extend the act, and by an order or regulation bring within its penal provisions matters which were not criminal by the terms of the act. United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591; U. S. v. Maid (D. C.) 116 Fed. 650; U. S. v. Blasingame (D. C.) 116 Fed. 654; Dent v. United States (Ariz.) 71 Pac. 920.

The Act of June 3, 1902, making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1903, authorized the Secretary to expend any part of the sum appropriated for the general expenses of the bureau of animal industry "in the purchase and destruc--

tion of diseased or exposed animals and the quarantine of the same, whenever in his judgment it is essential to prevent the spread of pleuropneumonia, tuberculosis, or other diseases of animals, from one state to another." This act limited the Secretary in these regards to diseased or exposed animals. It contained no prohibitory provisions and provided no penalty. It seems to me clear that at the time order No. 102 was issued there was no law making it an offense to take an animal free from disease, and which had not been exposed to an infectious or communicable disease, from one state into another, and that the prosecution cannot be maintained for a violation of the order of the Secretary only.

It is, however, urged that the prosecution may be sustained under the act of February 2, 1903, c. 349, 32 Stat. 791, pt. 1 [U. S. Comp. St. Supp. 1903, p. 372]. This act transferred certain powers vested in the Secretary of the Treasury by sections 4 and 5 of the act of May 29, 1884, c. 60, 23 Stat. 32, relating to the importation of animals from foreign countries, to the Secretary of Agriculture. It also provided that animals which had been inspected by an inspector or assistant inspector of the bureau of animal industry, and his certificate given that such animals were free from disease, might be shipped from one state to another without any other or further inspection. This latter provision was intended to permit the transportation of animals so inspected from one state to another without being subject to another inspection pursuant to state laws. The act further authorized and empowered the Secretary of Agriculture "from time to time to establish such rules and regulations concerning the exportation and transportation of live stock from any place within the United States where he may have reason to believe such diseases may exist into and through any state or territory, including the Indian Territory, and into and through the District of Columbia, and to foreign countries, as he may deem necessary, and all such rules and regulations shall have the force of law." The act nowhere attempts to prohibit the shipment of animals which are free from disease, and if Congress intended to empower the Secretary of Agriculture to make rules and regulations the violation of which alone should constitute a crime it was an unconstitutional delegation of legislative authority. While Congress may authorize the executive head of any department of government to make binding rules and regulations which are administrative in character, it cannot delegate the authority to make laws. That power is by the Constitution vested in Congress alone.

In United States v. Eaton the court say:

"It is well settled that there are no common-law offenses against the United States. * * * It was said by this court in Morrill v. Jones, 106 U. S. 466, 467, 1 Sup. Ct. 423, 27 L. Ed. 267, that the Secretary of the Treasury cannot by his regulations alter or amend a revenue law, and that all he can do is to regulate the mode of proceeding to carry into effect what Congress has enacted. * * * Much more does this principle apply to a case where it is sought substantially to prescribe a criminal offense by the regulation of a department. It is a principle of common law that an offense which may be the subject of criminal procedure is an act committed or omitted in violation of a public law either forbidding or commanding it. * * * It is necessary that a sufficient statutory authority should exist for declaring an act or omission a criminal offense. * * * Regulations prescribed by the President and by the heads of departments, under authority granted by Congress, may

be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offense in a citizen, where a statute does not distinctly make the neglect in question a criminal offense."

The penal provision of this act of February 2, 1903, reads:

"That any person, company or corporation knowingly violating the provisions of this act, or the orders or regulations made in pursuance thereof, shall be guilty of a misdemeanor, and on conviction shall be punished," etc.

It limits prosecutions to a violation of its provisions or rules and regulations made pursuant to its provisions. The order the violation of which is the foundation of this prosecution was made and issued before this act was passed, and, the order being void at that time, the act did not have the retroactive effect of giving validity to a prior void order.

The motion to direct a verdict is sustained, so, gentlemen of the jury, the court assumes the responsibility in this case, and you are directed to return a verdict of not guilty.