## UNITED STATES v. MOODY.

(District Court, W. D. Michigan, N. D.   August 10, 1908.)

1. CANALS—REGULATION OF GOVERNMENT CANALS—DELEGATION OF POWER TO EXECUTIVE DEPARTMENT.

Act Aug. 18, 1894, c. 299, § 4, 28 Stat. 362 (U. S. Comp. St. 1901, p. 3525), which makes it the duty of the Secretary of War "to prescribe such rules and regulations for the use, administration, and navigation of any or all canals and similar works of navigation that now are or hereafter may be, owned, operated or maintained by the United States as in his judgment the public necessity may require," and makes a willful violation of such rules and regulations a criminal offense punishable as therein provided, impliedly forbids the use of canals owned by the United States, under penalty of criminal prosecution, except in compliance with such rules and regulations, and the delegation of power to make the same to an administrative department is constitutional.

2. SAME—REGULATIONS OF DEPARTMENT—VALIDITY.

Rule 8 of the regulations promulgated by the Secretary of War for the government of St. Mary's Falls Canal, owned by the United States, which provides that "the movements of all vessels, boats, or other floating things in the canal shall be under the direction of the superintendent and his assistants, whose orders and instructions must be obeyed," is within the authority conferred on him by statute to make regulations for the operation of all canals owned, operated, or maintained by the United States, and valid; and an order given by the superintendent, or an assistant, for the movement of a vessel, is but the carrying into effect of such rule, and not the making of a special rule, and the disobedience of such an order is a violation of the rule, made punishable as a criminal offense under the statute.

3. INDICTMENT AND INFORMATION—VIOLATION OF DEPARTMENT REGULATIONS—CRIMINAL LAW—EVIDENCE—JUDICIAL NOTICE.

Regulations made by an executive department in pursuance of authority delegated by Congress have the force of law, and the courts take judicial notice of their existence and provisions, and it is unnecessary to set them out in an indictment for their violation, or to specify the particular rule violated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 183.]

4. SAME—MOTION TO QUASH—SURPLUSAGE.

Surplusage in an indictment is not ground for quashing the same, in whole or in part.

On Demurrer to Indictment and Motion to Quash.

Wm. K. Clute, Asst. Dist. Atty., for the United States.

Richard Inglis, for respondent.

KNAPPEN, District Judge. The respondent is indicted for a violation of the rules and regulations adopted by the Secretary of War for the use, administration, and navigation of St. Mary's Falls Canal; the specific charge being that he knowingly and willfully disobeyed a lawful order of an assistant superintendent to tie up the steamer of which the respondent was master at a certain point outside the canal gates, and in such disobedience proceeded with his boat down the canal towards the locks, thereby colliding with and injuring another steamer and blocking the passage of vessels in the canal for a long period of time. The respondent demurs to the indictment upon the ground that the statute under which the rules and regulations were made is unconstitutional, in that it delegates legislative power to an executive officer, and that rule 8, hereafter referred to, is invalid, as exceeding the scope of the act. He also moves to quash the indictment upon the grounds, first, that it does not clearly specify how the respondent violated the rules; second, that it does not state which rule was violated; and, third, that the indictment contains matter immaterial and prejudicial to the respondent.

Section 4, c. 299, Act August 18, 1894 (28 Stat. 362 [U. S. Comp. St. 1901, p. 3525]), provides that:

"It shall be the duty of the Secretary of War to prescribe such rules and regulations for the use, administration, and navigation of any or all canals and similar works of navigation that now are, or that hereafter may be, owned, operated or maintained by the United States as in his judgment the public necessity may require. Such rules and regulations shall be posted in conspicuous and appropriate places, for the information of the public; and every person and every corporation which shall knowingly and willfully violate such rules and regulations shall be deemed guilty of a misdemeanor, and, on conviction thereof in any District Court of the United States within whose territorial jurisdiction such offense may have been committed, shall be punished by a fine not exceeding $500.00, or by imprisonment (in the case of a natural person) not exceeding six months, in the discretion of the court."

By the rules and regulations adopted by the Secretary of War the canal was placed in charge of an engineer officer of the United States army, detailed by the Secretary of War; such officer to be locally represented by an assistant engineer, known as "canal superintendent." The rules provided for an additional force, consisting of three assistant superintendents and the necessary number of enginemen, watchmen, foremen, lockmen, and laborers; for the immediate control and management of the entire canal force by the superintendent, and in his absence or disability by the assistant superintendents; for a division of the remaining canal force into three watches, of eight hours each, consisting each of an assistant superintendent and the necessary enginemen, foremen, watchmen, lockmen, and laborers, who are re-

quired to act under the direction of the assistant superintendent "in passing vessels through the canal, in the care and protection of the canal and grounds, as well as of all other property belonging to the United States." The regulations for the use and navigation of the canal provide prescribed signals on the part of boats desiring the use of the canal, maximum length of tow line, order of precedence in passing through the canal and locks, regulations as to the limits of approach until the gates are ready for entrance, and rules for protecting the works from injury. Rule 8 provides:

"The movement of all vessels, boats or other floating things in the canal shall be under the direction of the superintendent and his assistants, whose orders and instructions must be obeyed."

Rule 19 provides:

"No person shall cause or permit any vessel or boat of which he is in charge, or on which he is employed, to in any way obstruct the canal, or delay in passing through it, unless he is permitted to do so by the superintendent or one of the assistant superintendents of the canal."

As to the constitutionality of the statute: It is elemental that Congress cannot delegate legislative authority to an executive officer or board, and that accordingly such executive officer cannot amend or extend a law of Congress, so as to make an act unlawful which but for the action of the executive officer would be lawful; in other words, that a sufficient statutory authority must exist for declaring an act or omission unlawful. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267; Field v. Clark, 143 U. S. 649, 691, 12 Sup. Ct. 495, 36 L. Ed. 294; United States v. Eaton, 144 U. S. 677, 687, 12 Sup. Ct. 764, 36 L. Ed. 591. It is, however, equally elemental that Congress may constitutionally delegate to an officer or board the determination of a question of fact or state of things upon which the operation of the law is made to depend, or the regulating by administrative rules of the mode of procedure to carry into effect what Congress has otherwise enacted. Field v. Clark, supra; Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; In re Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813; Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523. In the cases cited by counsel, where the courts have refused to enforce administrative rules adopted by an executive officer or board, it has been found that the regulation in question practically added to or amended the statute (as in Morrill v. Jones, supra; United States v. Maid [D. C.] 116 Fed. 650; United States v. Hoover [D. C.] 133 Fed. 950; United States v. Matthews [D. C.] 146 Fed. 306), or (as in United States v. Eaton, supra) that the punishment for violation of the regulation in question was not provided for by the statute, or that there was no express or necessarily implied authority from Congress to make regulations. Here authority to make regulations has been given in explicit terms, and the statute has expressly declared the violation of such rules to be a criminal offense.

The controlling question, then, is: Have the rules adopted by the Secretary of War attempted to make unlawful that which, but for

such rules, would have been lawful? In determining this question, the nature of the subject-matter under regulation must be considered. The statute relates to "the use, administration and navigation of any and all canals * * * owned, operated or maintained by the United States." The St. Mary's Falls Canal is not only operated and maintained by the United States, but is owned by the United States as proprietor. The history of the building and acquisition of this canal is given in United States v. Michigan, 190 U. S. 379, 23 Sup. Ct. 742, 47 L. Ed. 1103. Moreover, the canal in question, as is the case with all the canals operated and maintained by the United States government, is under the control of the military department of that government. It is beyond dispute that the United States has the power to exclude the public from the land and works of which it is the proprietor. Camfield v. United States, 167 U. S. 518, 524, 17 Sup. Ct. 864, 42 L. Ed. 260; United States v. Ormsbee (D. C.) 74 Fed. 207, 310; Van Lear v. Eisele (C. C.) 126 Fed. 823. And the fact that the canal is "free for public use" (that is to say, free of toll) does not impair the authority of the United States to forbid its use except upon compliance with reasonable regulations respecting such use. The case of Camfield v. United States involved public lands. In Van Lear v. Eisele it was held that Congress had the right to exclude the public from the Arkansas Hot Springs, except on terms prescribed by it, and that it might lawfully delegate to the Secretary of the Interior the power to make such regulations. United States v. Ormsbee will be referred to later.

Had the statute in terms forbidden the use of the canal, except under regulations adopted by the Secretary of War, the constitutionality of the delegation to that officer to make rules for its use and navigation could not well be doubted. In United States v. Ormsbee the identical statute here involved was in question. The regulation there under attack forbade the drawing of water from the Fox River Canal. Judge Seaman held that, as presumptively the rights in and control of the waters of the canal are vested in the United States, no persons can have the use either of the water or of the works, except under permission and subject to any regulations which may be imposed, and that without such permission the use would constitute trespass. He held that, even without the aid of another statute applicable in that case, which forbade the drawing off of water, no right existed to do the act complained of, in view of the statute here and there in question and of the ownership of the works by the United States government; that Congress had thus provided that permission might be granted through rules and regulations adopted by the executive department having charge of the works; and that, as Congress might so prescribe rules, it might equally well intrust to the Secretary of War a promulgation of administrative rules.

It is plain that the prohibition of the use of the canal and locks in question, except on compliance with rules governing such use and navigation, is absolutely necessary to any reasonable measure of protection to either the public or the proprietary government. That Congress ever contemplated the possibility of the unrestrained and unreg-

ulated use of the canal and locks by navigators according to their own will and caprice, and by their own operation, is practically unthinkable. To my mind, having in view the nature of the canal and its proprietary ownership by the United States, the absolute necessity of regulations, the history of its previous use, of which the court will take cognizance, and the language of the statute in question, a prohibition of the use of the canal, except upon compliance with the regulations provided for, is necessarily implied. In the language of Judge Lurton, speaking for the Circuit Court of Appeals for the Sixth Circuit in Coopersville Co-operative Creamery Co. v. Lemon, 163 Fed. 145:

"That which is plainly implied is as much the law as that which is expressed in plain terms."

The conclusion that the delegation in question is within the constitutional authority is further supplemented by the case of United States v. Breen (C. C.) 40 Fed. 402. In that case the question of the constitutionality of a regulation made by the Secretary of War respecting the navigation of the South Pass of the Mississippi river was involved. Congress gave authority to the Secretary of War to "make such rules and regulations for the navigation of the South Pass of the Mississippi river as to him seemed necessary or expedient for the purpose of preventing any obstruction to the channel through said South Pass and any injury to the works therein constructed." The statute provided a punishment identical to that imposed by the act here in question for the violation of any rule or regulation made by the Secretary of War in pursuance of the act. The rule involved in the Breen Case prescribed the speed of navigating vessels. Justice Lamar, sitting at circuit, held the act constitutional, as a delegation of power to the Secretary of War to fix rules for protecting improvements of the Mississippi. The implication of a prohibition against the navigation of the channel, except in obedience to regulations for its use, was no more direct in the Breen Case than in the case under consideration.

The conferring of power upon the Secretary of War to make rules for the use, administration, and navigation of the St. Mary's Falls Canal must be held valid.

The validity of rule 8 is attacked on the ground that the statute under which it is framed contemplates that the rules be general and published, while under the rule in question it is complained that the canal superintendent makes a new and specific rule each time he directs the movements of a vessel, and that such power is not and cannot be given. This contention, it seems to me, misconceives the term "rule," and overlooks the proprietary nature of the United States and its direct control, operation, and maintenance of the canal under the direction of the Department of War. The rules and regulations as adopted are all general. Rule 8 is no less general than each of the remaining 20. It applies to all cases alike. In a narrow sense the superintendent may be said to make a special rule each time he directs the movements of a vessel; but it is only in a narrow sense that such construction can be employed. The direction of the movements of each navigating vessel is really but a carrying into execution of the

general rule, and no more involves the making of a special rule in the case of each vessel than did the action of the tea inspector in Buttfield v. Stranahan, or that of the Secretary of War in Union Bridge Co. v. United States. The superintendent determines, in the case of each vessel, the question of fact as to what is, under the existing circumstances, a reasonable and proper movement of the vessel. This is not conferring arbitrary and capricious authority. Congress could not, by its own legislation, determine these questions of fact, and thus direct the movements of individual vessels in the canal and locks; and therefore, if this rule 8 is invalid, it follows that it is legally impossible to provide for the personal execution on the spot of the general rule, notwithstanding the United States is the proprietor and operator of the works, and this in the face of the fact that, for the proper administration of the canal and the protection of the United States in its use and administration, it is necessary that some one in authority should determine what each vessel should do, so that all can pass through without injury either to the boats of navigators generally, the vessels of the United States, which under the rules are given precedence over other vessels, or to the works themselves. If each master were at liberty to direct the movements of his own boat, not only would delays and confusion, and even injury to life and property, be constantly imminent, but the United States would be excluded from the operation of its own proprietary works. To appreciate this fact, one need only consider what is charged to have happened in the case complained of. It is no answer to say that the superintendent's power should be limited to warning and removing vessels which disobey the direction of the superintendent, as distinguished from punishment for disobedience. Such a remedy would, in the case of this canal, be no remedy at all. The superintendent could not physically remove the offending vessel in time to prevent injury to other vessels, and perhaps other lives, and possible serious injury to the canal works.

The cases cited by respondent's counsel do not, in my judgment, support his contention. In Horn v. People, 26 Mich. 221, there was no statute, ordinance, or rule placing the movements of vessels under the direction of the harbor master; nor was it charged that the offending vessel was impeding the rights of navigation. The charge was, as stated by the court:

"That the accused disobeyed an order of the harbor master to leave a private wharf, not on any ground of disorderly and obstructive conduct, but merely because the wharfinger did not want him there."

The court held:

"The state has no more right to assume protection of private wharfs than of private lots from encroachment."

In Schaezlein v. Cabaniss, 135 Cal. 466, 67 Pac. 755, 56 L. R. A. 733, 87 Am. St. Rep. 122, the proposition that one using the public waters of the state may do so only subject to such conditions as the state may impose is distinctly asserted. The other cases cited are thought to be distinguishable from the case at bar.

It must be held that disobedience to an order regularly given by an

assistant canal superintendent, in the absence of fraud or bad faith, is punishable under the statute.

It is urged that the indictment shows that the direction in question was given by a lockman, and that such workman has no power of direction. The indictment charges that the lockman was acting as assistant superintendent. This is a question of fact.

The point that the indictment does not clearly specify in what manner the respondent violated the rules does not seem to be well taken in fact. Nor is there force in the objection that the indictment does not state which rule was violated. Regulations made by an executive department, in pursuance of authority delegated by Congress, have the force of law, and the courts take judicial notice of their existence and provisions. It is therefore unnecessary to set out the rule alleged to be violated, either in terms or by number. Wilkins v. United States, 96 Fed. 837, 37 C. C. A. 588.

The statement in the indictment of the effect of the disobedience by the respondent of the order in question is not so far immaterial and prejudicial to the respondent as to justify action by the court. It may be surplusage, but such consideration does not justify the quashing of the indictment, in whole or in part.

The demurrer will be overruled, and the motion to quash denied, with leave to respondent to plead on the first day of the next term of court.