

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable John E. Taylor
Chief Supervisor
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-853
Re: Rule to require owner of a tract
of land to pool and combine with
other tracts.

We are in receipt of your opinion request wherein you ask us the following questions:

"1. Does the Railroad Commission of Texas have the right under the law as it now exists to promulgate as a part of its spacing regulations and as a conservation measure in a particular oil field the following provisions: 'As to any tract containing less than 20 acres, the Commission, in order to prevent waste or to prevent the confiscation of property, will grant exceptions to prevent drilling on such tracts upon application therefor as hereinabove provided; however, the Commission will not grant an application to drill on a tract or tracts containing less than 20 acres unless the applicant has made a bona fide effort to pool such tract or tracts with a contiguous tract or tracts or parts thereof, so as to establish at least a 20-acre unit. In such cases, applicant shall offer evidence at the Hearing on his application concerning his efforts to enter into a pooling agreement.'"

"2. Is the Railroad Commission of Texas now clothed with the legal power to adopt any rule which would require the owner or owners of a tract of land to pool or combine same as a prerequisite to granting such owner or owners a permit to drill a well for oil and/or gas thereon even though the drilling of same be necessary in order to prevent waste or the confiscation of property."

In an article styled "The Conservation of Oil", 51 Harvard Law Review 1236, by the Honorable Northcutt Ely, we find the following statement:

"The Texas statute says that 'It is not the intent of this act to require -- that the separately owned properties in any pool be unitized under one management, control or ownership.' Texas Annotated Revised Civil Statutes, Vernon's 1937, Article 6014g. However, several cases which have denied exceptions to the spacing rule and thereby prevented drilling of wells on small tracts have suggested that a fair result could be reached by control of production on the adjoining lands. The power of the Commission to regulate production in relation to spacing was thought favorably settled in the decision in Brown v. Humble Oil Company, 126 Tex. 296, 83 S.W. (2) 935, but the opinion on rehearing, 126 Tex. 296 at 314, 87 S.W. (2) 1069, cast some doubt upon this, and the Commission has indicated that it does not construe the original provision as authorizing it to require pooling. (Statement of Chairman Thompson at hearing, May 17, 1937.)"

While we do not contend that such a departmental construction should govern in answering this question, we do feel that same is entitled to considerable weight, is persuasive, and should be given our consideration.

An injunction against production has been denied in some cases until the well owner shall (at some future date) have obtained "the amount of oil he is legally entitled to"; that is, "his fair share of the oil in place under his land." See Stanolind Oil & Gas Company v. Railroad Commission, 96 S. W. (2) 664; Humble Oil & Refining Company v. Railroad Commission, 85 S. W. (2) 813.

In 1935 Oklahoma and New Mexico, and in 1936 Louisiana enacted statutes of a new pattern. These statutes which have been the subject of considerable favorable attention before trade and professional groups, authorize the regulatory body to establish in each pool proration units composing a uniform number of acres fixed by the area which one well will economically drain and develop. Where the size or shape of an individual tract does not conform to that of the standard proration unit, "Pooling" of properties can be required. By "Pooling" is meant an arrangement whereby the owners of small tracts club together on the costs of drilling a single well, sharing in expense and in the recovery in proportion to their acreage. However, these allow the owner of a small tract to drill his well, notwithstanding failure of his lease to equal the size of a proration unit; but in such case he receives only an allowable which is proportionate to the ratio between his area and the area of the standard unit.

The New Mexico and Louisiana statutes make "Pooling" available to owners who, because of the smallness or shape of their tracts, might be deprived of a fair share of oil in the proration unit. The Oklahoma statute permits the owners of one or more smaller tracts in the unit to pool with the owner of a majority of the acreage in the unit if the latter drills a well. The Oklahoma statute has been upheld by the Supreme Court of Oklahoma in a recent case by a clear-cut, logical opinion which cites other applicable decisions. Patterson v. Stanolind Oil and Gas Company, 77 Pac. (2) 83 (March 11, 1938). Affirmed 59 Supreme Court Reporter 259.

These statutes have an interesting background. As long ago as 1928 in the case of Marrs v. City of Oxford, 24 F. (2) 541, an ordinance of a Kansas town which limited the drilling of wells to one per city block was sustained by the Federal Court. The ordinance allocated a 1/8th royalty interest among the land owners of a block in proportion to their acreage and awarded the right to drill to the operator holding the majority of acres in the block under lease. It gave the other land owners the right to contribute to the cost of that well, and to receive in return a share in the working interest in proportion to acreage. The case turning on the validity of a city ordinance did not involve a regulatory statute although the Court did mention the doctrine of correlative rights in passing. A subsequent decision by a Texas Federal Court has sustained an order of the Railroad Commission, made in conformity with an ordinance of the City of South Houston, creating drilling districts of sixteen acres each, limiting drilling to one well per district, and providing for a pooling of expenses and/or production among the properties in the district along the same general lines of the ordinance passed upon in Marrs v. City of Oxford. Tysco Oil Company v. Railroad Commission, 12 F. Supp. 195, Again, Tysco Oil Company v. Railroad Commission, 12 F. Supp. 202.

"The drilling district program, involving compulsory localized unitization, is a step in the direction of a plan of field-wide unitization introduced to the industry nearly a decade ago. The legal and engineering bases for requiring and effectuating compulsory unitization of an entire pool seem capable of demonstration, but the political difficulty of enactment and enforcement have kept field-wide compulsory unitization in the blueprint stage." See "The Conservation of Oil" in Volume 51 of the Harvard Law Review, 1937-1938, at page 1236 by Northcutt Ely.

In Texas we do not have such a statute which authorizes a regulatory body to establish in each pool proration

units composing a uniform number of acres fixed by the area which one well will economically drain and develop, but on the other hand, Article 6014 (g), Revised Civil Statutes of Texas, 1925, expressly provides:

> ". . .It is not the intent of this act to require. . .that the separately owned properties in any pool be unitized under one management, control or ownership."

While it has been argued by some persons that this statute does not directly prohibit enforced pooling in the State of Texas by the Railroad Commission, (see article published in the Progress Reports of the American Petroleum Institute Committee on Well Spacing, submitted at the Eighth Mid-year Meeting, at Wichita, Kansas, May, 1938, on page 8 thereof under paragraph B, designated "Pooling of Tracts in Lieu of Exceptions"), see 13 Texas Law Review, "The Rule of Capture", written by Robert E. Hardwicke of Fort Worth, Texas, at page 421:

> "In Texas many of the difficulties in connection with the spacing rules arise from efforts to get exceptions to the general rule, especially where the distribution of the allowable is on a potential basis, regardless of the size of the tract upon which the well is situated. Texas Revised Civil Statutes, 1925, Article 6014g, as amended by Texas Laws, 1935, House Bill 782, Par. 2, approved by the Governor April 13, 1935, which reads in part: 'It is not the intention of this act to require repressuring of an oil pool or that the separately owned properties in any pool be unitized under one management, control or ownership.' This language appeared in previous acts, and apparently for the purpose of protecting some operators from the bugaboo of compulsory unit operation for the entire pool. In that connection the article by Vance Rowe, 'Unitization Proves Itself' in 1934, 74 Oil Weekly, No. 7, page 19, is interesting: 'While the Texas act may have the desired and desirable effect of preventing unit operation for the entire pool, it has been forcefully argued that it also prevents the Railroad Commission from enforcing the pooling of small or irregularly shaped tracts with other tracts so that unnecessary wells will not be drilled. If there be no authority to enforce pooling of tracts in order to carry out a proper and uniform spacing program or a proration unit program, the Texas act certainly authorizes, and almost requires, confiscation of the smaller or irregularly shaped tracts, should the spac-

ing of proration units programs be strictly enforced
to prevent the waste and hazard of close drilling.'"

We are of the opinion, however, that the language of Article
6014 (g) certainly does not specifically grant the power to
enforce pooling and clearly, by innuendo, precludes the en-
forcement thereof by the Railroad Commission. On the other
hand, we are of the opinion that Article 6014 (g) as amended,
defines and denounces "waste" of oil and gas, and that same
confers upon the Railroad Commission the power to adopt rules
and regulations to prevent waste. The power thus conferred
is administrative. It is the power to enforce, or execute the
statute; not to extend it. The members of the Commission
must stay within the statute, "which goes to the jurisdiction."
Waite v. Macy, 246 U. S. 606, 609; Railrod Commission v.
G. H. & S. A. Railway Company, 112 S. W. 353; Sugarland Rail-
way Company v. State, 163 S. W. 1057.

The Railroad Commission may adopt reasonable regula-
tions to enforce the statute, but cannot go beyond it.

We submit that if such an important change in policy
is to be adopted, it must be adopted by the Legislature it-
self, if indeed, under the situation, it can be adopted at
all.

It is settled law that the power to promulgate
"rules and regulations" for the purpose of enforcing or ex-
ecuting a statute is not legislative. United States v.
United Verde Copper Co., 196 U. S. 20 7-215, but on the other
hand it has been repeatedly held that the limits of the
Railroad Commission's power is to regulate and not to abridge
or enlarge; see Railroad Company v. United States, 188 F.
191-195;

"If the power here granted to promulgate
rules and regulations has been validly granted,
it is simply the power, "to make and enforce regu-
lations for the execution of a statute according
to its terms.' It is not the power to modify ex-
isting rules of law."

The true rule on this subject is very carefully
stated in St. Louis Merchants' Bridge Company v. United States,
188 Federal 191, opinion by Judge Sanborn of the Eighth Cir-
cuit Court of Appeals, one of the ablest of the Federal Judges,
as follows:

"The Congress did not in fact delegate, and
it could not delegate, to the Secretary of Agri-

culture, or to any other executive officer the power to add to the class of railroad companies or to the acts punishable under this statute such others as in his judgment ought to be punishable thereunder.

"A legislative body may delegate the power to find some fact or situation on which the operation of a law is conditioned or to make and enforce regulations for the execution of a statute according to its terms. Union Bridge Company v. United States, 204 U. S. 364, 386, 27 Sup. Ct. 357, 51 L. Ed. 523; Marshall Field & Company v. Clark, 143 U. S. 649, 677, 693, 12 Sup. Ct. 495, 36 L. Ed. 294; Caha v. United States, 152 U. S. 211, 218, 219, 14 Sup. Ct. 513, 38 L. Ed. 415; St. Louis & I. M. Ry. v. Taylor, 210 U.S. 281, 287, 28 Sup. Ct. 616, 52 L. Ed. 1061; Coopersville Cooperative Creamery Company v. Lemon, 163 Fed. 145, 147, 89 C. C. A. 595.

But it cannot delegate its legislative power, its power to exercise the indispensable discretion to make, to add to, to take from, or to modify the law. 'The true distinction,' said Judge Ranney for the Supreme Court of Ohio in Cincinnati, Wilmington & Zanesville R. R. Company v. Commissioners, 1 Ohio St. 77, 88, in a declaration which has been repeatedly approved by the Supreme Court, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made.' Marshall Field & Company v. Clark, 143 U. S. 649, 693, 12 Sup. Ct. 495, 33 L. Ed. 294; Union Bridge Company v. United States, 204 U. S. 364, 382, 27 Sup. Ct. 367, 51 L. Ed. 523; Morrill v. Jones, 106 U. S. 466, 467, 1 Sup. Ct. 423, 27 L. Ed. 267; United States v. Eaton, 144 U. S. 677, 687, 688, 12 Sup. Ct. 764, 36 L. Ed. 591; United States v. Maid (D.C.) 116 Fed. 650; United States v. Blaslingame (D.C.) 116 Fed. 654; United States v. Hoover (D.C.) 133 Fed. 950, 952; United States v. Moody (D.C.) 164 Fed. 269, 271; Locke's Appeal, 72 Pa. 491, 498, 13 Am. Rep. 716.

Therefore, answering your last question first, it is our opinion, and you may be so advised, that the Railroad Commission of Texas has no authority, conferred upon it, under the present statutes which will enable it to make such regula-

tory orders that would require the owner or owners of a tract of land to pool or combine same with other tracts as a prerequisite to granting such owner or owners a permit to drill a well for oil and/or gas thereon even though the drilling of same be necessary in order to prevent waste or confiscation of property.

Having answered your second question in the negative and being of the opinion that an administrative body is precluded from doing that indirectly which it cannot do directly, we also answer your first question in the negative. In addition to the authorities we have already cited, we feel that we may be justified in making the following observations with reference thereto:

If the Railroad Commission were to enter an order to the effect:

"The Commission will not grant an application to drill on a tract or tracts containing less than 20 acres unless the applicant has made a bona fide effort to pool such tract or tracts with a contiguous tract or tracts or parts thereof, so as to extablish at least a 20-acre unit. In such cases, applicant shall offer evidence at the hearing on his application concerning his efforts to enter into a pooling agreement."

then and in that event, it is our opinion that the effect of such an order would be that the Commission would be imposing a rule affecting the title to property and being a regulation on the use of property. Such a regulation could not be imposed without an express delegation of statutory authority from the Legislature to the Commission, giving it power so to do.

We further submit that the effect of such an order would be to permit the Railroad Commission to pass upon the reasonableness of the proposed pooling contract, sought to be entered into by the applicant and in the absence of express legislative authority granting the Commission the power so to do, we are of the opinion that in so doing the Commission would be in fact exceeding its delegated authority and would be wholly without jurisdiction in so acting.

In the case of United States v. 11,150 Pounds of Butter, 195 F. 657-644, the court held that a forfeiture of property could not be validly claimed on account of a violation of an administrative order or regulation where the controlling statute did not so provide.

This case follows the theory that the legislative policy in respect to the consequences flowing from a violation of an administrative regulation must be declared by the Legislature itself.

It is our opinion that if the Legislature had intended to grant the Railroad Commission authority to impose such regulatory orders - that intention could have been easily stated - and it is necessary that it should have been stated. (See) Eaton v. United States, 144 U. S. 677.

Trusting that this satisfactorily answers your question in the premises, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Edgar Cale
Edgar Cale
Assistant

EC:MM:wc


APPROVED:
S/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS