# UNITED STATES *v.* EATON.

CERTIFICATE OF DIVISION IN OPINION FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 291. Submitted April 12, 1892. — Decided April 25, 1892.

A regulation made August 25, 1886, by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, under § 20 of

the act of August 2, 1886, c. 840, (24 Stat. 209,) in relation to oleomargarine, required wholesale dealers therein to keep a book, and make a monthly return, showing certain prescribed matters. A wholesale dealer in the article who fails to comply with such regulation is not liable to the penalty imposed by § 18 of the act, because he does not omit or fail to do a thing required by law in the carrying on or conducting of his business.

There are no common law offences against the United States.

It is necessary that a sufficient statutory authority should exist for declaring any act or omission a criminal offence; and the statutory authority in the present case was not sufficient.

THE court stated the case as follows:

This case comes to this court on a certificate of division in opinion between the judges of the Circuit Court of the United States for the District of Massachusetts.

At May term, 1888, of that court, an indictment was found by the grand jury against George R. Eaton, containing two counts. The first count alleged that on the 1st of November, 1886, and on divers days thereafter up to and until the 28th of June, 1887, at Boston, in that district, and at a place of business situated therein, the defendant was engaged in the business, avocation and employment of a wholesale dealer in oleomargarine, and was subject and liable to all needful regulations made by the Commissioner of Internal Revenue of the United States, with the approval of the Secretary of the Treasury, for the carrying into effect of the act of Congress approved August 2, 1886, c. 840, (24 Stat. 209,) entitled "An act defining butter, also imposing a tax upon and regulating the manufacture, sale, importation, and exportation of oleomargarine;" that, at the times above mentioned, said regulations were well known to the defendant, and it became his duty to keep a book showing the oleomargarine received by him, and from whom the same was received, and also showing the oleomargarine disposed of by him, and to whom the same was sold or delivered, in accordance with the regulations made by the Commissioner of Internal Revenue and approved by the Secretary of the Treasury on August 25, 1886 ; and that, at the times above mentioned, he wilfully, knowingly and unlawfully failed to keep such book showing the matters above

stated, as required by law. The second count alleged, with the other averments contained in the first count, that it became the duty of the defendant to make a monthly return to the collector of internal revenue, showing the oleomargarine received by the defendant, and from whom it was received, and also that disposed of by him and to whom it was sold or delivered, in accordance with said regulations; and that, at the times above mentioned, he wilfully, knowingly and unlawfully failed to make such monthly return to the collector of internal revenue, as required by law. The defendant filed a demurrer to the indictment, alleging that it was insufficient in law.

At the hearing in the Circuit Court on the demurrer, the following questions arose, upon which the judges by whom the court was held were divided in opinion; and those questions were stated and certified to this court: "First. Whether a wholesale dealer in oleomargarine, who knowingly and wilfully fails and omits to keep a book showing the oleomargarine received by him and from whom the same was received, and also showing the oleomargarine disposed of by him and to whom the same was sold or delivered, as required by the regulations made by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, August 25, 1886, is liable to the penalty imposed by section 18 of the act of Congress approved August 2, 1886, entitled 'An act defining butter, also imposing a tax upon and regulating the manufacture, sale, importation, and exportation of oleomargarine.' 24 Stat. 209. Second. Whether a wholesale dealer in oleomargarine, who knowingly and wilfully fails and omits to make monthly returns to the collector of internal revenue, showing the oleomargarine received by him and from whom the same was received, and also showing the oleomargarine disposed of by him and to whom the same was sold or delivered, as required by the said regulations, is liable to the penalty mentioned in the first question."

*Mr. Assistant Attorney General Parker* for plaintiff in error.

The sole question to be reviewed here is whether Congress possessed power to authorize the officers named to establish a regulation requiring wholesale dealers in oleomargarine to keep a record of their dealings therein and to report the details of such dealings as required by the regulation quoted.

The regulation involved, which was made by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, pursuant to said section 20, is as follows: Wholesale dealers in oleomargarine will keep a book (Form 61) and make a monthly return on Form 217, showing the oleomargarine received by them and from whom received; also, the oleomargarine disposed of by them and to whom sold or delivered.

It will be noticed that this regulation when separated into its two propositions furnishes the two grounds of the indictment set forth in the record, and, correspondingly, the two questions which are set forth in the certificate of division.

Form 61 provided for a record of all oleomargarine received by the wholesale dealer, showing the date of its receipt, from whom it was received, the amount, the manufacturer thereof, and also the date when the same was disposed of by the wholesale dealer, to whom it was sent, the name of manufacturer and the amount. The serial numbers of the packages were to be stated in both cases.

Form 217 provided for a monthly return of the same statements and details by the wholesale dealer to the Commissioner of Internal Revenue, and a recapitulation of its contents was to be verified by the oath of the dealer.

This rule is shown by the Department regulations to have been made August 25, 1886; it was terminated by the act of October 1, 1890 (26 Stat. 567, sec. 41, p. 621).

The oleomargarine act defines butter and defines oleomargarine, and places a special tax upon manufacturers and on sellers of the last-named commodity, and requires payment of a stamp duty on the same, and provides for publicity and for supervision of the manufacture, sale and exportation thereof.

The regulation in question was duly formulated under said section 20 to provide certain necessary rules for a compliance

with the intent of and for the carrying out of the purposes of the enactment.

The regulation is shown by Treasury Document of August 25, 1886, to have been made by the Commissioner with the approval of the Secretary.

No contention appears to be made as to the needfulness of the rule, and as it was left to the Commissioner and Secretary to determine what was needful in the premises their decision was final.

The analogies of the customs laws and of the laws relating to the collection of duties upon tobacco and spirits naturally suggested the regulation adopted under the oleomargarine law, and it seems plain that the proper and effective execution of this law would be scarcely possible without a regulation equivalent to the one now under examination.

As the word "regulation" has a technical meaning, an argument based upon definitions or upon general reasoning would be of little service.

Cases involving the exercise of executive power have, in several instances, come before the courts, and questions of the application and force of departmental regulations have, from time to time, been passed upon by the judicial branch of the government.

The scope and effect of regulations of the departments have repeatedly come under consideration in the Court of Claims. *Harvey* v. *United States,* 3 C. Cl. 38, 41; *Landram's Case,* 16 C. Cl. 74, 84, 85; *Savings Bank* v. *United States,* 16 C. Cl. 335, 347, 349; *Maddox* v. *United States,* 20 C. Cl. 193; *Symonds' Case,* 21 C. Cl. 148, 152; *Stotesburg* v. *United States,* 23 C. Cl. 285; *Romero* v. *United States,* 24 C. Cl. 331.

The Supreme Court, also, has been called upon to consider and decide upon the force and application of executive regulations in several instances. *Kendall* v. *United States,* 12 Pet. 524, 610; *United States* v. *Eliason,* 16 Pet. 291, 301; *Aldridge* v. *Williams,* 3 How. 1, 29; *Gratiot* v. *United States,* 4 How. 80, 117; *Ex parte Reed,* 100 U. S. 13, 22; *Smith* v. *Whitney,* 116 U. S. 167, 181; *United States* v. *Symonds,* 120 U. S. 46. In that case the court say, p. 49:

" The authority of the Secretary to issue orders, regulations and instructions, with the approval of the President, in reference to matters connected with the naval establishment, is subject to the condition, necessarily implied, that they must be consistent with the statutes which have been enacted by Congress in reference to the navy. He may, with the approval of the President, establish regulations in execution of or supplementary to, but not in conflict with, the statutes, defining his powers or conferring rights upon others. The contrary has never been held by this court. What we now say is entirely consistent with *Gratiot* v. *United States*, 4 How. 80 and *Ex parte Reed*, 100 U. S. 13, upon which the government relies. Referring in the first case to certain army regulations, and in the other to certain navy regulations, which had been approved by Congress, the court observed that they had the force of law. See also *Smith* v. *Whitney*, 116 U. S. 181. In neither case, however, was it held that such regulations, when in conflict with the acts of Congress, could be upheld."

The theory submitted on behalf of the plaintiff in error is :

(1) That the regulation made by the Commissioner of Internal Revenue and approved by the Secretary of the Treasury was a proper and a "needful" regulation under the oleomargarine law ;

(2) That this regulation was an outgrowth of the statute and acquired and possessed the force of law ;

(3) That the keeping of the records and the reporting of the details of the business, supervised under the law, became, as to the defendant, "things required by law in the carrying out or conducting of his business" (sec. 18) ;

(4) And that being authorized by Congress, and being formulated and promulgated pursuant to an enactment, and being subordinate to, and in furtherance of, the statute, and not in conflict with it, the regulation should, under the decisions, be sustained and the demurrer should be overruled.

*Mr. P. A. Collins* for defendant in error.

MR. JUSTICE BLATCHFORD, after stating the case, delivered the opinion of the court.

Sections 1 and 2 of the act in question define what is "butter" and what is "oleomargarine."

Section 3 imposes special taxes of certain amounts on manufacturers of oleomargarine, on wholesale dealers therein, and on retail dealers therein.

Section 4 imposes a penalty on manufacturers, wholesale dealers, and retail dealers, for carrying on those respective businesses without having paid the special tax therefor.

Section 5 provides that every manufacturer of oleomargarine shall file with the collector of internal revenue of the district in which his manufactory is located, such notices, inventories and bonds, shall keep such books, render such returns of materials and products, put up such signs, affix such number to his factory, and conduct his business under such surveillance of officers and agents, as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may, by regulation, require. But that section imposes no penalty for a non-compliance with its provisions.

Section 6 contains requirements in regard to the packing of oleomargarine by manufacturers, and in regard to the packages in which sales shall be made by manufacturers, wholesale dealers and retail dealers, and imposes a penalty for the violation of its requirements.

Section 7 contains requirements as to putting a label on each package by the manufacturer, and imposes a penalty for not doing it.

Section 8 provides for collecting a tax of two cents a pound on the article from the manufacturer by coupon stamps, and applies the requirements of law as to stamps relating to tobacco and snuff.

Section 9 provides for assessing and collecting the tax which has not been paid by stamps, and declares that such tax shall be in addition to the penalties imposed by law for the sale or removal of the article without the payment of such tax.

Section 10 provides for an additional tax on imported oleomargarine, by stamps to be affixed and cancelled while it is in the custody of custom officers, and for warehousing the article; and it imposes a penalty for a violation of the section by a

customs officer, and a penalty for selling or off' 'ng for sale imported oleomargarine not put up in packages and stamped as provided by the act.

Section 11 imposes a penalty for purchasing or receiving for sale any oleomargarine not branded or stamped according to law, and § 12 a penalty for purchasing the article or receiving it for sale from a manufacturer who has not paid the special tax.

Section 13 requires the destruction of stamps on packages which have been emptied, and imposes a penalty for the failure to do so.

Section 14 provides for the appointment of chemists and microscopists, and authorizes the Commissioner of Internal Revenue to decide what articles are taxable under the act, and what substances made in imitation or semblance of butter, and intended for human consumption, contain ingredients deleterious to the public health, and also provides for appeals from the decision of the Commissioner of Internal Revenue to a board of three officers, whose decision shall be final.

Section 15 provides for the forfeiture of packages which are not stamped, and of packages intended for human consumption which contain ingredients so adjudged to be deleterious to the public health, and imposes a penalty for removing or defacing stamps, marks or brands on packages containing oleomargarine taxed as provided in the act.

Section 16 contains a provision for the export of oleomargarine to a foreign country without the payment of tax or affixing stamps, under regulations to be made by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, and for the branding of the exported packages; but it prescribes no penalties.

Section 17 provides that if any manufacturer of oleomargarine defrauds or attempts to defraud the United States of the tax thereon, he shall forfeit the factory, manufacturing apparatus, and all oleomargarine and raw material found in the factory and on the premises, and be fined and imprisoned as provided in that section.

Section 18 is as follows: "That if any manufacturer of oleo-

margarine, any dealer therein or any importer or exporter thereof shall knowingly or wilfully omit, neglect or refuse to do, or cause to be done, any of the things required·by law in the carrying on or conducting of his business, or shall do anything by this act prohibited, if there be no specific penalty or punishment imposed by any other section of this act for the neglecting, omitting or refusing to do, or for. the doing or causing to be done, the thing required or prohibited, he shall pay a penalty of one thousand dollars; and if the person so offending be the manufacturer of or a wholesale dealer in oleomargarine, all the oleomargarine owned by him, or in which he has any interest as owner, shall be forfeited to the United States."

Section 19 provides " that all fines, penalties and forfeitures imposed by this act may be recovered in any court ·of competent jurisdiction;" and section 20 "that the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may make all needful regulations for the carrying into effect ·of this act."

Section 21 is unimportant as regards this case.

It is stated in the brief of the. Assistant Attorney General, counsel for the ·United States, that one. of the regulations of August 25, 1886, named in the two counts of the indictment, and claimed to be applicable to the present case, was as·follows : " Wholesale dealers in oleomargarine will keep a book (Form 61) and make a monthly return on Form 217, showing the .oleomargarine received by them, and from· whom received; also, the oleomargarine disposed of by them and to whom sold or delivered;" that that regulation covers the two ·counts of ;. the indictment and the two questions⸲ certified; and. that Form 61, so referred to, is a form for a record·in a book, and Form 217 is ·one for the monthly return; and it is claimed that such regulation was properly made under § 20 of the act.

It is provided by § 41 of the act approved October 1, 1800. c. 1244, entitled "An act to reduce the revenue and equalize duties on imports, and for other purposes," 26 Stat. 567, .621, "that wholesale dealers in oleomargarine shall keep such books and render such returns in relation thereto as the Com

missioner of Internal Revenue, with the approval of the Secretary of the Treasury, may, by regulation, require, and such books shall be open at all times to the inspection of any internal revenue officer or agent."

But, although the regulation above recited may have been a proper one to be made, under § 20 of the act of August 2, 1886, yet the question to be determined in this case is whether a wholesale dealer in oleomargarine, who knowingly and wilfully fails and omits to keep the book and make the monthly return prescribed in the regulation of the Commissioner of Internal Revenue, thereby fails and omits, within the meaning of § 18 of the act, to do a thing "required by law in the carrying on or conducting of his business," so as to be liable to the penalty prescribed by that section.

In this connection, it is worthy of observation that § 5 of the act requires that every manufacturer of oleomargarine shall keep such books, and render such returns of materials and products, as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may, by regulation, require; but it imposes no penalty on the manufacturer for any neglect to keep such books and render such returns, nor does it impose a duty to keep the books and render the returns on a wholesale dealer in the article, such as the defendant in this case was. The question, therefore, is whether a wholesale dealer in oleomargarine, who omits to keep the books or to render the returns prescribed by the regulation made under the authority of § 20 of the act, is liable to the penalty prescribed by § 18, as having omitted or failed to do a thing "required by law in the carrying on or conducting of his business," within the meaning of § 18.

Regulations for carrying the act into effect, to be made under the provisions of § 20, are necessary, as they are in various departments of the public service. By § 161 of the Revised Statutes, the head of each department is authorized "to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use and preservation of the records, papers and

property appertaining to it;" and, by § 251, the Secretary of the Treasury is authorized to make and issue instructions and regulations to collectors, receivers, depositaries, officers and others, and to prescribe rules and regulations, not inconsistent with law, to be used in executing and enforcing the internal revenue laws and laws relating to raising revenue from imports, or duties on imports, or to warehousing.

Section 20 of the act in question would be fully carried out by making regulations of the character of those provided for in § 161 and § 251 of the Revised Statutes, without extending the provision of § 18 so as to make a criminal offence, as a neglect to do a thing "required by law," of a neglect to do a thing required only by a regulation of the Commissioner of Internal Revenue.

It is well settled that there are no common law offences against the United States. *United States* v. *Hudson*, 7 Cranch, 32; *United States* v. *Coolidge*, 1 Wheat. 415; *United States* v. *Britton*, 108 U. S. 199, 206; *Manchester* v. *Massachusetts*, 139 U. S. 240, 262, 263, and cases there cited.

It was said by this court in *Morrill* v. *Jones*, 106 U. S. 466, 467, that the Secretary of the Treasury cannot by his regulations alter or amend a revenue law, and that all he can do is to regulate the mode of proceeding to carry into effect what Congress has enacted. Accordingly, it was held in that case, under § 2505 of the Revised Statutes, which provided that live animals specially imported for breeding purposes from beyond the seas should be admitted free of duty, upon proof thereof satisfactory to the Secretary of the Treasury and under such regulations as he might prescribe, that he had no authority to prescribe a regulation requiring that, before admitting the animals free, the collector should be satisfied that they were of superior stock, adapted to improving the breed in the United States.

Much more does this principle apply to a case where it is sought substantially to prescribe a criminal offence by the regulation of a department. It is a principle of criminal law that an offence which may be the subject of criminal procedure is an act committed or omitted "in violation of a

public law, either forbidding or commanding it." 4 American & English Encyclopedia of Law, 642; 4 Bl. Com. 5.

It would be a very dangerous principle to hold that a thing prescribed by the Commissioner of Internal Revenue, as a needful regulation under the oleomargarine act, for carrying it into effect, could be considered as a thing "required by law" in the carrying on or conducting of the business of a wholesale dealer in oleomargarine, in such manner as to become a criminal offence punishable under § 18 of the act; particularly when the same act, in § 5, requires a manufacturer of the article to keep such books and render such returns as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may, by regulation, require, and does not impose, in that section or elsewhere in the act, the duty of keeping such books and rendering such returns upon a wholesale dealer in the article.

It is necessary that a sufficient statutory authority should exist for declaring any act or omission a criminal offence; and we do not think that the statutory authority in the present case is sufficient. If Congress intended to make it an offence for wholesale dealers in oleomargarine to omit to keep books and render returns as required by regulations to be made by the Commissioner of Internal Revenue, it would have done so distinctly, in connection with an enactment such as that above recited, made in § 41 of the act of October 1, 1890.

Regulations prescribed by the President and by the heads of departments, under authority granted by Congress, may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offence in a citizen, where a statute does not distinctly make the neglect in question a criminal offence.

*The questions certified are answered in the negative.*