HARRISON v. MOYER, Warden.

(District Court, N. D. Georgia. February 25, 1915.)

1. CONSPIRACY ⊜⟶43—INDICTMENT—STATUTE.
An indictment found by the grand jury of the District of Columbia, which charges the defendant with conspiracy to obtain money by false pretenses without charging any overt act, does not charge an offense under Penal Code (Act March 4, 1909, c. 321) § 37, 35 Stat. 1096 (Comp. St. 1913, § 10201), making punishable by not more than two years' imprisonment a conspiracy to defraud the United States, where one or more of the conspirators do any act to effect the object of the conspiracy, but charges a common-law conspiracy, which is punishable under Code of Laws 1901 D. C. (Act March 3, 1901, c. 854, 31 Stat. 1337) § 910, providing for the punishment of criminal offenses, not covered by any section of the Code, by imprisonment not to exceed five years.
[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. ⊜⟶43.]

2. CRIMINAL LAW ⊜⟶10—OFFENSES—COMMON-LAW OFFENSE IN DISTRICT OF COLUMBIA.
Under Act Feb. 27, 1801, c. 15, 2 Stat. 103, accepting the cession of the District of Columbia and continuing in force the laws of Maryland in that District, the common law, both civil and criminal, was extended to that District, and there may be common-law offenses against the United States committed therein.
[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 8; Dec. Dig. ⊜⟶10.]

3. HABEAS CORPUS ⊜⟶30—GROUNDS FOR RELIEF—ERROR.
Where the trial court imposed sentence under a statute which he determined to be applicable, error in that determination could be corrected only by writ of error, not by habeas corpus proceedings.
[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. ⊜⟶30.]

Application for a writ of habeas corpus by John B. F. Harrison against W. H. Moyer, Warden. Application denied.

Robert B. Troutman, of Atlanta, Ga., for petitioner.
John W. Henley, Asst. U. S. Atty., of Atlanta, Ga., for respondent.

NEWMAN, District Judge. John B. F. Harrison is confined in the United States penitentiary at Atlanta, Ga., in this district, and applies to this court for a writ of habeas corpus.

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The copy of the indictment attached to the application for the writ shows the indictment to have been as follows:

"The grand jurors of the United States of America, in and for the District of Columbia aforesaid, upon their oath do present that one John B. F. Harrison and one William A. Marshall, each late of the District aforesaid, on the twentieth day of January, in the year of our Lord one thousand nine hundred and eleven, and at the District aforesaid, unlawfully, feloniously, and fraudulently did combine, conspire, confederate, and agree together, by divers unlawful and fraudulent devices and contrivances, and by divers false pretenses, unlawfully and feloniously to obtain from, and acquire to themselves of and from one Edward C. Sears divers large sums of money, to wit, the sum of nine hundred and fifty-five dollars in money, of the value of nine hundred and fifty-five dollars, of the moneys of the said Edward C. Sears, and to cheat and defraud him thereof, against the form of the statute in such case made and provided, and against the peace and government of the said United States."

It further appears that the petitioner was tried by a jury in the Supreme Court of the District of Columbia on this indictment, and was convicted on November 9, 1911, and on December 8, 1911, the petitioner, Harrison, was again brought before the court, and was sentenced to five years in the penitentiary to be designated by the Attorney General of the United States, to take effect from the date of his arrival in the penitentiary. Petitioner claims that the highest sentence that could have been imposed upon him was two years in the penitentiary. The question in the case arises in this way:

Under section 5440 of the Revised Statutes, now section 37 of the federal Penal Code, it is provided that:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned not more than two years, or both."

The claim of the petitioner, as I understand it, is that this was the law applicable to his offense. It will be perceived that in this indictment no overt act was charged, so it cannot be that the petitioner was indicted under section 37 of the federal Penal Code, because it would have amounted to no indictment under that statute. Ryan v. United States, 216 Fed. 13, 42, 132 C. C. A. 257; Hyde v. United States, 225 U. S. 347, 365, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

Section 910 of the Code of the District of Columbia, enacted by Congress and approved March 3, 1901 (31 Stat. 1337), contains this provision:

"Punishment for Offenses not Covered by Provisions of Code.—Whoever shall be convicted of any criminal offense not covered by the provisions of any section of this Code, or of any general law of the United States not locally inapplicable in the District of Columbia, shall be punished by a fine not exceeding one thousand dollars or by imprisonment for not more than five years, or both."

It seems clear that this petitioner was indicted, tried, convicted, and sentenced for a common-law conspiracy. In Tyner v. United States, 23 App. D. C. 324, it is stated (sixth headnote):

224 F.—15

"While it is the general rule that there are no common-law offenses against the United States, such rule does not apply to the District of Columbia (following De Forest v. United States, 11 App. D. C. 458); and the common law being in force in the District of Columbia when Rev. Stat. U. S. § 5440 (U. S. Comp. Stat. 1901, p. 3676), was enacted, which makes it an indictable offense to conspire to commit any offense against or to defraud the United States in any manner and for any purpose, any common-law offense not repealed, superseded, or plainly inconsistent with existing legislation or necessarily obsolete is an offense against the United States within the meaning of that section."

[2] While it is well settled that there are no common-law offenses against the United States, by the decisions of the Supreme Court (United States v. Eaton, 144 U. S. 677, 687, 12 Sup. Ct. 764, 36 L. Ed. 591) it is quite as well settled now, by the decisions of the Court of Appeals of the District of Columbia, that this does not apply to the District of Columbia (Tyner v. United States, supra). In the case of De Forest v. United States, cited in the Tyner Case, supra, the Court of Appeals of the District of Columbia deals with this question, and the following is an extract from the opinion (11 App. D. C. 458, 464).:

"The appellant's last assignment of error is founded upon the refusal of the trial court to allow the motion in arrest of judgment, which motion is based upon the theory that the appellant's offense was a common-law offense, and not one made such by any statute of the United States, and that there are no common-law offenses against the United States. And in support of this position the case of United States v. Eaton, 144 U. S. 677 [12 Sup. Ct. 764, 36 L. Ed. 591] and others are cited. In the case of United States v. Eaton, and in the several other cases therein referred to, it is stated in very broad and sweeping language, that 'it is well-settled law that there are no common-law offenses against the United States,' and yet it is perfectly apparent that the statement is to be qualified with reference to the circumstances under which it was made. As against the United States, regarded as coextensive with the federal Union of states and operating within the territorial limits of the states, it is undoubtedly true that there are no common-law offenses; for the jurisdiction there given to the United States by the federal Constitution is distinctly and expressly restricted to the powers enumerated in the Constitution. But the statement was not intended to have application to the District of Columbia. The question as to the authority of the United States in this District is not what power has been conferred upon it, but rather what power has been inhibited to it. Subject to the limitations imposed by the Constitution itself and by the spirit of our free institutions, the United States have supreme and exclusive power over the District of Columbia, and they are not limited to the governmental powers in the Constitution specifically enumerated as defining their jurisdiction for the country at large. For the District of Columbia it is competent for the Congress of the United States to declare that the common law is to be regarded as in force, and even in the absence of express statutory enactment we should have to hold, in view of the circumstances, that the common law in its entirety, both in its civil and criminal branches, except in so far as it has been modified by statute or has been found repugnant to our conditions, is in force in the District of Columbia. But we are not left to implication in that regard. At the time of the cession of the territory of Columbia by the state of Maryland to the federal Union, its law, as well as that of the rest of the states, was the common law of England, both civil and criminal, so far as that common law was suited to our condition and was unaffected by statute. And with the common law the state of Maryland had adopted a considerable part of the statute law of England. When by the act of February 27, 1801 (2 Stat. 103), the Congress of the United States finally accepted the cession and assumed jurisdiction over the ceded district, it was specifically provided 'that the laws of the state of Maryland, as they now [then] exist, shall be and continue in force in that part of the said District which was ceded by that state to the United States and by

them accepted.' This express enactment, if any such enactment was needed at all, was amply sufficient to continue in force and to perpetuate to the present day in the District of Columbia the common law of England as it existed in Maryland at that time, with all the existing statute legislation of the state and all the statute legislation of England that had been adopted by Maryland. And upon that theory of the law we have been conducting our affairs for nearly 100 years. It is very true that much of the criminal branch of our common law has either become obsolete or has been obliterated by statutory enactment upon the same subject. Nevertheless it is true that where it has not been repealed by express statutory provision, or modified by inconsistent legislation, or where it has not become obsolete or unsuited to our republican form of government, the common law of England in all its branches, both civil and criminal, remains to-day the law of the District of Columbia, and it has been repeatedly so held. See United States v. Watkins, 3 Cranch, C. C. 441 [Fed. Cas. No. 16,649]; United States v. Marshall, 6 Mackey, 34; United States v. Hale, 4 Cranch, C. C. 83 [Fed. Cas. No. 15,279]. The case of United States v. Eaton, therefore, is not applicable to the District of Columbia, and was not intended to be applicable to it. And we are of opinion that it was not within the purview of that case to hold·that there can be no common-law offenses against the United States in the District of Columbia."

In United States v. Watkins, 3 Cranch, C. C. 441, Fed. Cas. No. 16,049, it is said that:

"The Circuit Court of the District of Columbia for the county of Washington has jurisdiction of an offense committed in that county against the common law of Maryland, adopted as the law of the United States for that county, by the act of Congress of February 27, 1801 (2 Stat. 103), although that offense may consist in the fraudulently obtaining of the money of the United States, by an officer of the United States, by means of false pretenses. By the cession of this part of the District to the United States by Maryland, all the state prerogatives which Maryland enjoyed under the common law which she had adopted, so far as concerned the ceded territory, passed to the United States. All the power which Maryland had,·by virtue of that common-law prerogative, to punish, by indictment, offenders against her sovereignty, and to protect that sovereignty, as to this District, became vested in the United States. The United States, therefore, have a criminal common-law jurisdiction in this part of the District, and this court has a criminal common-law jurisdiction."

[3] Of course it cannot be known here what was in the mind of the court trying this case; but, if there be any law applicable to criminal cases in the District of Columbia under which this indictment and this conviction and sentence can be sustained, it is sufficient and should be adopted and applied here in this application for a writ of habeas corpus. No overt act being charged, the indictment must have been framed under some law which made conspiracy an offense without the charge of an overt act. This would be true of the common law as it exists in the District of Columbia under the authorities which have been cited, and there being nothing in the Code of the District of Columbia which specifically denounces a conspiracy to defraud as a crime, punishment would be under section 910 of that Code, and that provides for a maximum penalty of five years.

The court having imposed the sentence evidently under this section, and having necessarily determined that it applied, even if there was error, it would be a matter that should have been corrected by writ of error, and not by habeas corpus proceedings.

It appearing from the petition itself that the petitioner is not entitled to the writ of habeas corpus, and no relief could be granted if the same were issued, the application for the writ is denied.