PATRICK DOWD, Respondent, *v.* THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.

[First Department, May 5, 1939.]

*Edward J. McGratty, Jr.*, of counsel [*Arthur Bainbridge Hoff* with him on the brief; *William C. Chanler, Corporation Counsel*], for the appellant.

*Jay Leo Rothschild* of counsel [*Walter S. Beck* with him on the brief; *Harold Stern*, attorney], for the respondent.

MARTIN, P. J. The plaintiff has recovered a judgment for $52,584.77 against the defendant, the board of education of the city of New York, based upon his claim for additional compensation for janitorial service in connection with evening school activities of Washington Irving High School for the period April 1, 1926, to and including June 1, 1935. The basis of this claim is that the compensation paid to him subsequent to April 1, 1919, was for " all regular day activities," in accordance with resolution adopted by the board of education in February, 1919; that every other janitor received extra compensation for evening school activities, and that he is entitled to be compensated for his extra services in accordance with the schedules adopted by the board of education.

The plaintiff's employment as janitor or custodian of Washington Irving High School began in 1913, when that school was opened. At that time there were two systems of compensation for school janitors, one called the " direct " system, and the other the " indirect " system. A janitor employed under the direct system was paid only for his personal services, and he neither employed nor paid subordinate employees required to assist him. Under the indirect system an individual was employed as janitor of a particular school and was paid a fixed sum per annum out of which he paid his own compensation and the compensation of such engineers, mechanics, cleaners, etc., as he deemed necessary to employ to take care of his school.

The compensation paid to janitors employed under the indirect system was fixed on what was known as the " measurement " system under a specific mathematical formula of multiplying the number of square feet of floor space to be cleaned by the fixed unit price, modified, as the occasion might require, by the addition of premiums because of the presence of special conditions. If the customary measurement system were to be applied to Washington Irving High School the compensation to be paid to the janitor would amount to $10,260. The building was a special one, with features requiring extra services. In addition, evening school, as well as day school, activities were regularly to be conducted therein and extra help was necessary to keep it clean.

The committee on care of buildings of the board of education, after consideration of all of the elements involved, fixed the compensation of the janitor of this school at $23,330, and the board of education adopted a resolution requesting the board of estimate and apportionment to recommend to the board of aldermen that the compensation attached to the position of janitor of Washington Irving High School be fixed at $23,330 per annum, to take effect May 8, 1913. The board of estimate and apportionment fixed the compensation, " temporarily and until further modified," at the rate of $22,480, to take effect August 1, 1913, " said rate to include regular night school service." At its meeting of July 15, 1913, the board of aldermen concurred in the resolution of the board of estimate and apportionment and fixed the compensation of the said position as set forth therein. The compensation of the plaintiff was, therefore, fixed in 1913 at $22,480 per annum, and, as the resolution of the board of estimate and apportionment made clear, that rate included night school service.

The phrase in the resolution of the board of estimate, " temporarily and until further modified," had particular reference to a proposed plan for the reorganization of the janitorial force of the schools, which was not carried out, so that the phrase is, for present purposes, without significance. The plaintiff continued to receive compensation at the rate of $22,480 per annum until 1918, when, on the recommendation of the board of education, the compensation of all school janitors was increased by ten per cent, and the board of aldermen, on December tenth of that year, adopted a resolution increasing plaintiff's compensation to $24,728, effective as of October 1, 1918.

A meeting of the board of education was held on February 13, 1919, and there was presented a report of the committee on the question of janitorial compensation, and the following resolutions were adopted:

" *Resolved,* That the plan for compensating the janitorial force, as indicated, contained and set forth in the foregoing report, be, and it is hereby, adopted as the official plan of compensation for the janitorial force in all regular day activities, pursuant to the powers conferred upon the Board of Education by the New York State Education Law, said plan to become effective March 1, 1919.

" *Resolved,* That in pursuance of the authority vested in this Board by the New York Education Law, the rates of compensation for the janitorial force in all regular day activities be, and they are hereby, fixed at the sums set opposite each designated building in the accompanying schedule, subject to such adjustment as may be found to be necessary upon a further audit and verification of

the various component items upon which the plan of compensation is based; fixations of compensation to be adjusted to the nearest figure divisible by twelve and all fractions of a dollar to be discarded.

" *Resolved*, That in the fixation of compensation applicable to new buildings, or the enlargement of present structures, or the change of apparatus, equipment and conditions in any and all premises controlled by the Board of Education, the foregoing plan of computation shall govern automatically, and such fixation of compensation shall be computed by the Auditor, certified in writing and approved by the Superintendent of Schools, as a condition precedent to the making of payments thereunder, and that this method of compensation be incorporated into the Bylaws.

" *Resolved*, That, in those cases where the proposed schedules operate to reduce the compensation fixed at present, no change in compensation be made during the incumbency of the present janitors or other persons in charge.

" *Resolved*, That in no case shall any janitor or other person in sole charge of any school building receive less than $900 per annum.

" *Resolved*, That, as provided by Section 56 of the Charter, the Board of Estimate and Apportionment be, and it is hereby, requested to recommend to the Board of Aldermen the fixation of the compensation attached to the position of janitor of all public school buildings in accordance with the schedule herewith submitted. * * *

" Janitors' Salary Schedule
" Borough of Manhattan

| · School | Salary on measurement prior to Oct. 1, 1918 | Salary with 10% increase from Oct. 1, 1918. | Proposed salary |
|---|---|---|---|
| * * * | * * | * * | * * |
| Wash. Irving H. S.... | 22,480. | 24,728 00 | 24,864 00" |

The plaintiff's right to succeed depends upon the effect of the action of the board of education at its meeting of February 13, 1919. Plaintiff emphasizes what are termed the significant facts, as follows:

" 1. The purpose was to revise the entire system of compensation throughout the city of New York.

" 2. Such revision was to affect only ' regular day activities.'

" 3. As far as possible, the purpose was to create an automatic system of compensation for such ' regular day activities,' dependent upon objective facts, rather than upon personal considerations.

" 4. It was recognized that, to some extent, the basis for fixation of compensation, nevertheless, had to be arbitrary in order to allow for the differences inherent in construction, operation and utilization of various school buildings.

" 5. With knowledge of all the facts, and without any specific exposition of the processes by which the figures were reached, plaintiff's salary was fixed at $24,864 per annum for 'regular day activities.' Precisely how this figure was reached does not appear."

On the other hand, it is urged by the defendant that the report of the committee presented a comprehensive plan for revising the computation of the annual compensation of janitors; that, after referring to the change in character of recent building construction and equipment of the department and the effect of the existing labor conditions (it will be remembered that this was shortly after the close of the World war) it proposed new schedules for computing the compensation of school janitors on a revised measurement basis. The report stated, in part:

" The schedules contained in the report submitted by the Auditor, now under consideration, provide an automatic method of determining janitorial compensation upon a basis of service measurement which includes all the various elements that enter into janitorial work. * * *

" The proposed plan operates automatically; it takes into consideration all the various factors that enter into janitorial work to determine service or labor; it makes possible the fixation of salary upon an impersonal measurement of service."

" In the proposed plan the compensation for cleaning is, as at present, based upon the number of square feet to be cleaned."

The plan proposed was not new. It was simply a plan for compensating on a measurement basis according to new rates. The resolution adopted the plan. Reference is made in the resolution to the plan, and the plan was adopted as the official plan for compensating on " an impersonal measurement " basis, the janitorial force for " all regular day activities."

The compensation of the plaintiff was not originally determined on a measurement basis, and his original compensation was intended to cover both day school and evening school activities. The plan adopted in February, 1919, for " all regular day activities " was based on a measurement basis. The testimony of the auditor of the board of education is that, if calculated by the measurement basis of the new plan referred to in the resolution of February, 1919, the plaintiff's compensation would have amounted to only $15,204. The amount set opposite plaintiff's name in the resolution was $24,864.

The phrase, " all regular day activities," was intended to apply only to those janitors whose compensation was computed according to the new measurement plan. It is clear, beyond doubt, that the new measurement plan was not applied in computing the compensation of plaintiff. The $24,864, the figure at which plaintiff's

compensation was fixed, was many thousands of dollars more than the compensation listed in respect of the janitor of any of the other five hundred schools listed. The next highest compensation listed was only $15,928.

To support the plaintiff's claim it must be found that, by the resolution, the board of education intended (1) to change the terms upon which plaintiff was originally employed for both day and evening school activities; (2) to make the increased figure apply only to his day school activities; and (3) to pay plaintiff over $9,000 a year more than any other custodian would have received for precisely the same work in the same school. There is nothing to justify the claim that the board intended to make such a great discrimination in favor of the plaintiff.

Much is made of the fact that the figure of $24,864, fixed by the resolution, is $136 more than the plaintiff was receiving immediately prior thereto. Increases were added to the compensation of other janitors, but such increases were based on the application of the measurement plan adopted. The defendant urges that the $136 added to the amount of plaintiff's compensation was based on his own claim with respect to the increased cost to him of furnishing janitorial services for both day and evening school activities. This, however, does not stand analysis. But there is no other explanation of how the figure was arrived at. In any event, the addition of this insignificant sum does not support the claim of the plaintiff that it was intended thereby to completely change the terms of his employment.

The conclusion is inescapable that the board intended that the new rate would apply only to such janitors as were paid on a measurement basis, and this conclusion is fortified by consideration of the entire report and the resolution. The report pointed out that the application of the proposed rate of compensation would operate to increase the pay of the janitors of most of the schools, but in certain specified instances it would operate to decrease the compensation of a few, and, to protect these few, it was provided that the new rate would go into effect only when vacancies in their schools occurred. In other instances, application of the compensation rate would leave the incumbents receiving less than $900 per annum, and it was recommended that a minimum of $900 per annum be made applicable to this latter group. The resolution carried these recommendations into effect, and, furthermore, it was provided that the method of compensation would be automatically applicable to new buildings or enlargements or changes in existing structures, and the compensation would be computed by the auditor.

It is urged that the resolution of the board of education has the same effect as an enactment of the Legislature, and that the express provisions thereof may not be disregarded. At the time in question the board of education did not have power to fix the amount of plaintiff's compensation. This power, under the provisions of section 56 of the then-existing Greater New York Charter, resided solely in the board of aldermen acting on the recommendation of the board of estimate. In 1913 neither the board of estimate nor the board of aldermen felt bound by the resolution of the board of education recommending that plaintiff's compensation be fixed at the figure named. Obviously, therefore, the resolution of the board of education, adopted on February 13, 1919, was nothing more than a resolution of an administrative body expressing a policy of its relationship to its own employees. In *United States* v. *Eaton* (144 U. S. 677) it was said: " Regulations prescribed by the President and by the heads of departments, under authority granted by Congress, may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offence in a citizen, where a statute does not distinctly make the neglect in question a criminal offence."

And in *Caha* v. *United States* (152 U. S. 211) it was held: " Wherever, by the express language of any act of Congress, power is entrusted to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which the public is interested, and in respect to which they have a right to participate, and by which they are to be controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice."

The resolution in question is not such a rule or regulation as comes within the purview of the holding of either of the cases cited.

Following the action of the board of education in February, 1919, the board of estimate and apportionment, at its meeting on April 11, 1919, adopted a resolution recommending to the board of aldermen the establishment of grades of position of janitors in the department of education, to be effective as of April 1, 1919; the salary for Washington Irving High School was listed at $24,864. On May 13, 1919, the board of aldermen, by resolution, approved of and concurred in the resolution of the board of estimate and apportionment and fixed the salaries of the positions of janitors as set forth in the resolution of the latter board adopted April 11, 1919.

There is nothing in the resolution of either the board of estimate and apportionment or the board of aldermen to indicate in any way what service the compensation covered. These resolutions, therefore, may not be read to support the claim of the plaintiff. As we have already indicated, his success depends entirely on the effect of the resolution of the board of education adopted on February 13, 1919. As we read that resolution, it adopted a plan for compensating janitors on a measurement basis. Any claim under the resolution would have to be based on application of the rates mentioned in the report. Plaintiff never was paid on a measurement basis. In the absence of a clear showing that it was intended to compensate plaintiff at such an inordinately disproportionate rate as to amount to a gift, we are of the opinion that, by the resolution of February 13, 1919, it was not intended to change the method of compensating plaintiff, as fixed at the opening of the school in 1913.

Reading the resolution as we do, it is unnecessary, for the purposes of this litigation, to construe the conduct of the parties through the years following 1919 down to plaintiff's separation from the service.

The judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs.

GLENNON, UNTERMYER, COHN and CALLAHAN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs. Settle order on notice.