(C. D. 621)

SHELL OIL CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 24, 1942)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: This suit against the United States involves two cases of machinery which arrived at the port of New York and were shipped under immediate transportation entry in bond to the port of Los Angeles, Calif., where they were entered for exportation on a transportation and exportation entry on August 31, 1933. At the port of Los Angeles under date of September 1, 1933, they were laden on board the Norwegian M/S *Norden* under customs supervision for shipment to Yokohama, Japan.

The importer was required to give a bond in connection with the exportation. The form of customs bond applicable under these circumstances is set out in T. D. 45474, 61 Treas. Dec. p. 358, at 373, and provides among other things, that the importer "shall furnish the said collector of customs with proof that the said articles, if entered for exportation, were exported through a customs port of exit under customs supervision and landed beyond the limits of the United States." The covenants of this bond are in conformity with the statute and the regulations promulgated thereunder. The provisions of the statute applicable to this transaction are found in section 553 of the Tariff Act of 1930 which is in the following language:

SEC. 553. ENTRY FOR TRANSPORTATION AND EXPORTATION.

Any merchandise, other than explosives and merchandise the importation of which is prohibited, shown by the manifest, bill of lading, shipping receipt, or other document to be destined to a foreign country, may be entered for transportation in bond through the United States by a bonded carrier without appraisement or the payment of duties and exported under such regulations as the Secretary of the Treasury shall prescribe, * * *

The Secretary of the Treasury under authority of said section 553 promulgated articles 1252 and 1253 of the Customs Regulations of 1931, which are as follows:

Art. 1252. Export bonds.—(a) Bonds required for the exportation of merchandise may be canceled only upon the specification of such merchandise on the outward manifest, or outward bill of lading, the inspector's certificate of lading, the record of clearance of the vessel, and the production of a foreign landing certificate if such certificate is required by the collector. The requirements of paragraph 3 of vessel bonds, customs Form 7567 or 7569, may be considered as having been complied with upon the production of such of the above-mentioned documents as may be applicable thereto: *Provided,* That upon exportation of narcotic drugs, intoxicating liquors, and the equipment, stores (except such supplies as are placed on board vessels under the provisions of secs. 309 and 317 of the tariff act of 1930), and machinery for vessels, a landing certificate will be required in all cases.

(b) The landing certificate herein provided for must be produced within six months from date of exportation and must be signed by a revenue officer of the foreign country to which the merchandise is exported, unless it is shown that such country has no customs administration, in which case the certificate may be signed by the consignee or by the vessel's agent at the place of landing, and sworn to before a notary public or other officer authorized to administer oaths and having an official seal.

(c) In cases where landing certificates are required and the same can not be produced, an application for waiver thereof may be made to the bureau through the collector, accompanied by such proofs of exportation and landing abroad as may be available.

Art. 1253. Exportation—When not bona fide.—(a) An exportation is a severance of goods from the mass of things belonging to this country with the intention of uniting them to the mass of things belonging to some foreign country. The shipment of merchandise abroad with the intention of returning the same to the United States is not an exportation. Merchandise of foreign origin returned from abroad under these circumstances is dutiable according to its nature, weight, and value at the time of its original arrival in this country.

(b) Bonds given for the exportation of merchandise should not be canceled by collectors, unless they are satisfied that there has been an actual bona fide exportation.

The landing certificate offered to the collector in cancelation of the bond was not acceptable to that official and an amount equal to the duty on the merchandise, viz, $226.05, was demanded and paid. It is for the refund of this sum that the present suit is brought.

No testimony was produced at the hearing, the case having been submitted upon certain documents transmitted to the court by the collector, entitled "Inclosure No. 17496, Treasury Department, Bureau of Customs." These documents consist of the following:

(1) A letter from the Asiatic Petroleum Co. (North China) Ltd., dated October 26, 1933, to the firm of Guy B. Barham Co., customs brokers, of San Pedro, Calif., in which it is stated:

In accordance with the request of the Master M/V "Norden", we enclose herewith Landing Certificate duly attested in respect to 2 cases Machinery Parts carried by and fitted into the above vessel.

You will note that we have not obtained endorsement by the Chinese Maritime Customs, as it is not possible, the vessel being at this port on a Customs holiday. We are informed by the U. S. Consulate that the Customs' endorsement is not usually obtained on Landing Certificates issued here.

(2) A copy of a letter to the collector of customs at Los Angeles, Calif., dated December 14, 1933, by the Guy B. Barham Co., which is as follows:

We are handing you herewith Landing Certificate covering T & E #75, of August 31, 1933, covering two (2) cases of machinery which arrived ex SS "Norden".

Will you please acknowledge receipt of this Landing Certificate on the carbon copy of this letter?

Thanking you in anticipation of your courtesy, we are,

Respectfully yours,

Guy B. Barham Company,

per L. A. Perryman.

At the bottom of this sheet is written in what appears to be indelible pencil, the following:

Not acceptable

NBR

(3) The Landing Certificate which is as follows:

Certificate of Consignee of Landing of Merchandise at Foreign Port

I, A. J. Grant, of The Asiatic Petroleum Co. (North China) Ltd., do hereby certify that the goods or merchandise hereinafter described have ~~been landed~~ arrived at Shanghai between the 10th and _____ days of October 1933 on board the M/S "Norden" of Bergen, Norway, whereof Svend Pedersen is at present master, viz.

| Marks | Numbers | Description of goods | Value |
|---|---|---|---|
| DW 430/1–2 M/S "Norden" transit | 430/1–2 | 2 cases Machinery Spare Parts for use and carried on by said vessel for use thereon | U. S. $ 838. 48 |

According to the bills of lading, the same were shipped on board the M/S "Norden" at San Pedro the port of Wilmington, California, in the United States of America, on or about the 2nd day of September 1933, and consigned to The Asiatic Petroleum Co. (North China) Ltd. by The Shell Oil Company of Wilmington, merchant.

Given under my hand at Shanghai, this 13th day of October 1933.

For the Asiatic Petroleum Co. (North China) Ltd.

(signed) A. J. Naul

This is followed by the consular verification on Form No. 151 consular.

It will be noted that the original wording of the form of certificate has been changed in that the expression "been landed" has been changed to "arrived." The collector was not satisfied that the regulations had been complied with and that the machinery had been landed in a foreign country. No other evidence was produced.

By reference to the Standard Dictionary we find that the term "arrive" is defined as follows:

To reach a destination or an object, as in travel.

The same authority defines the verb "land" as:

To bring from water to land; especially, to transfer from a vessel to the shore; debark; as, to land troops, or a cargo.

A comparison of these two definitions does not indicate that the two terms are synonymous. Therefore it would seem that the collector was correct in his holding that the regulations had not been complied with.

The reasoning of the court in the case of *A. Grove Knutsen* v. *United States*, 57 Treas. Dec. 554, T. D. 43960, is, we think, applicable here. There the collector demanded payment of a sum equal to the duty upon certain machinery which was entered at the port of New York in bond for immediate transportation to Los Angeles, at which port it was entered for exportation and installed on a foreign vessel which subsequently sailed for a foreign port. The court there held that the machinery was properly subject to duty in the absence of compliance with the statutory and administrative provisions applicable. That case arose under the Tariff Act of 1922, and the Customs Regulations of 1923 promulgated under authority of that act. After setting forth the provisions of the statute and the regulations, the court used the following language:

A reading of these two provisions discloses that they establish a statutory procedure and mode of proof, and it is a rule of law that when a statute provides a mode of proof it must be followed and no other will be accepted. As was said in *Dutilh* v. *Maxwell*, 2 Blatch. 541; Fed. Cas. 4207, cited in our decision T. D. 29446, G. A. 6849:

When a mode of proof is prescribed by the terms of the law or by its fair interpretation, no other than the statutory evidence can be admitted.

In the instant case the proviso to section 556 confers express authority on the Secretary of the Treasury to require the production of a landing certificate, and article 1118, promulgated under authority of that section, expressly requires a landing certificate for the exportation of machinery for vessels. Reasonable regulations made in pursuance of express authority have the force of law. *United States* v. *Eaton*, 144 U. S. 677.

The last paragraph of said article 1118 provides a means whereby a waiver of the production of a landing certificate may be obtained, where the same can not be produced. It does not appear that the importer herein ever made an application for waiver, and therefore he has failed to follow the mode of procedure prescribed by law.

In the present state of the tariff law it is intended that no goods shall be brought into the United States without payment of duty except under two conditions: (1) That they shall be specifically exempted in the law from paying duty; and (2) that they may be imported under bond for exportation, in which case if not exported duty is assessed thereon according to the terms of the statute. In the case at bar the goods were not exported under the terms provided for in the statute, which are specific and must be followed, hence it is in accordance with the terms of the law that duty should be levied upon the goods. It appears that the collector has made an assessment on this importation which he terms a fine equal to the amount of duty had the goods been entered for consumption. Our judgment is that a duty should be paid upon this importation in the absence of the fulfillment of the requirements of the law by the importer. We therefore affirm the finding of the collector as to the amount which he levied and hold that it was a duty which should be paid by the importer.

Again in the case of *Guy B. Barham Co.* v. *United States*, C. D. 559, 7 Cust. Ct. 155, this court held that articles 1252 and 1253, *supra*, are

reasonable and, being made in pursuance of the statute, are mandatory.

We find that the plaintiff herein has failed to comply with the requirements of the regulations, which is a condition precedent to exemption from payment of a sum equal to the duty. Judgment will therefore be rendered overruling plaintiff's claim.