Joseph L. McGlynn, Jr., U. S. Atty., Michael L. Temin, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Jacob Kossman, Philadelphia, Pa., for defendant.

**UNITED STATES of America**

v.

**Sam SCHWARTZ.**

**Crim. No. 19953.**

United States District Court
E. D. Pennsylvania.

Sept. 21, 1959.

CLARY, District Judge.

Defendant herein has been indicted under the above-numbered Indictment in 17 Counts for the perpetration of a Mail Fraud, in violation of Title 18 U.S.C. § 1341. Subsequent thereto, defendant filed a motion for the suppression of all evidence on the ground that any evidence to support the Indictment had been illegally obtained against the defendant by a Postal Inspector of the United States Post Office Department between October, 1958 and March, 1959, in violation of the Fourth and Fifth Amendments to the Constitution of the United States and the Postal Laws of the United States, Title 18 U.S.C.A. §§ 1701–1703.

A hearing was held on the motion on Monday, May 25, 1959. At the hearing it developed that the investigation leading up to the Indictment had two distinct aspects. Preliminarily, a Postal Inspector was assigned to scrutinize *delivered* mail to the defendant, who was trading as "Direct Lines" at the Hamilton Court Hotel, 101 South 39th Street, Philadelphia, Pennsylvania. This occurred in late 1958. The second aspect consisted of a "mail watch" on *undelivered* mail set up in the Post Office and in this fashion: A Clerk was assigned in the Post Office to scrutinize all mail address-

ed to the defendant at the Hamilton Court Hotel and to note the names and addresses of the senders of the first-class mail involved. The testimony disclosed that this "mail watch" and the listing of the senders of the letters was done in such a manner so as to not interfere with or delay the delivery of the mail which, of course, is proscribed. There is no substance to any complaint that there was either non-delivery, or delay in delivery, of first-class mail to the defendant.

Testimony taken at the hearing disclosed that in the investigation by the Postal Inspector at the Hamilton Court Hotel there was definitely overzealousness on the part of the investigator. Were it not for an important fact to be set out hereafter, the Court would have no hesitancy in suppressing the evidence obtained at the Hamilton Court Hotel because of unlawful search and seizure of the defendant's mail and telegraphic communication at that address. That question, however, is moot because it was developed at the hearing that *all evidence* which was used by the Government to secure the present Indictment was obtained from 17 persons whose names and addresses were first obtained by the Clerk at the General Post Office in the "mail watch" above described.

Defendant's position in this posture of the case is essentially twofold. He insists that: (1) the "mail watch" is prohibited by the Postal Department's Regulations; and (2) even if the "watch" itself is permissible, the disclosure by the Postal authorities to the Department of Justice of the information gathered is violative of the Postal Regulations. Since these Regulations have the force of law, he proceeds, evidence secured in violation of them must be suppressed. Defendant has not argued that any Con-

stitutional or statutory provision was infringed.

Before attempting to evaluate this submission it must, of course, first be determined whether the Regulations proscribe the practice followed in the instant case. The Postal Regulations formerly provided:

"(a) * * * Postmasters and others in the postal service shall not give to unauthorized persons information concerning mail matter * * *. Postmasters may give to officers of the law, upon proper identification, to aid in the apprehension of fugitives from justice, information regarding the addresses, return cards, or postmarks on mail matter * * *.

"(b) * * * Upon official request of a representative of another executive department, agency, or independent establishment of the Federal Government and the presentation of proper credentials, postmasters may, when practicable, furnish for official use information regarding the addresses, return cards, or postmarks on mail matter * * *." 39 C.F.R. § 41.4 (1949 ed.).

In 1954, after it came to light that the Postal Department, at the instance of the staff of a Senate Committee, had conducted a "watch" over the mail of a United States Senator and had turned over to the Committee staff the information compiled, a special Senate Committee consisting of Senators George and Ferguson issued a report strongly condemning the incident. S.Rep. No. 2510, 83d Congress, 2d Sess. (1954), reprinted at 101 Cong.Rec. 2564 (1955). The Regulations were then revamped, and presently appear in the Postal Manual as parts 311.6 and 311.7.[1]

---

I. The following Regulations of the Postal Department have also been cited by defendant:

1) "Sealed first-class mail while in the custody of the Post Office Department is accorded absolute secrecy. No persons in Postal Service, except those employed for that purpose in dead-mail of-

fices, may break or permit the breaking of the seal of any matter mailed as first-class mail without a legal warrant, even though it may contain criminal or otherwise unmailable matter, or furnish evidence of the commission of a crime." 39 C.F.R. § 3.1 (Supp.1959).

"311.6 *Mail Matter*.

"Furnish information concerning mail or mailing permits to postal inspectors and to the sender, the addressee, or the authorized representative of either * * *. Do not give such information to others * * *."

"311.7 *Concerning Fugitives*.

"Furnish to officers of the law * * * information regarding the addresses, return cards, or postmarks on mail to aid in the apprehension of fugitives from justice * * *."

■ Familiar rules of interpretation would indicate that since specific instances are enumerated in which access may be had to information garnered through a "mail watch", it was intended that access be denied in all other situations. See 2 Sutherland, Statutory Construction §§ 4915–17 (3d ed. 1943). Since defendant was not a fugitive from justice this would preclude making the date available to the Justice Department in the instant case. This approach is supported by the fact that subsection (b) of the former Regulation specifically permitted furnishing information to other governmental units such as the Justice Department. Its omission from the revised Regulations suggests a rejection of the policy it expressed, particularly since the essence of subsection (a) was retained. From this the Court must conclude that communicating the results of a "mail watch" to the Justice Department is prohibited by the Regulations. Since a violation is thereby established, it may be assumed for purposes of this motion that a "mail watch" per se also runs counter to the mandate of the Regulations.[2]

The Court is thus faced with a question of great difficulty. Does the violation of the Regulation require suppression of the evidence obtained? It is clear that evidence secured in violation of the Constitution, see Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, or a statute, see Draper v. United States, 1959, 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327; Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, must be suppressed in a Federal prosecution. A departmental regulation, however, places the issue in a somewhat different perspective.

The exclusionary rule represents an attempted accommodation of competing values. On one hand, the interest of society in the enforcement of the criminal law calls for use of relevant evidence however obtained. On the other hand, the interest of society in the protection of individual rights embodied in the Constitutional or statutory command that has been violated calls for exclusion of the evidence as the only effective means of enforcement. When such conflicting interests clash one must yield. The choice necessarily involves a value judgment, the product of a circumspect evaluation and balancing of the considerations favoring each. In this field the balance has been struck on the side of the values inhering in Constitutional and statutory directives. The choice, however, has not been an easy one; its merits are still vigorously disputed by a respectable body of opinion. To the ex-

---

2) "The return address of the sender must be shown on the address side of mail to secure its return * * *." Postal Manual, Part 158.3.

3) "Dead Mail.

&ast; &ast; &ast; &ast; &ast;

"Treatment.

&ast; &ast; &ast; &ast; &ast;

"At Dead Mail Office.

"Mail is examined and opened when necessary to find the name and address of the sender or addressee." Postal Manual, Part 158.822.

2. In addition to the Regulations referred to in this opinion, counsel for defendant has cited several others in support of his contention that the evidence in issue was secured in a prohibited manner. Since the Court, on the basis of the Regulations discussed, is in agreement with the defendant on this point, any support derived from these additional Regulations would be merely cumulative. See footnote 1.

616

tent that it is valid, its justification must be found in the origin of the values deemed controlling. They presumably constitute a value or policy judgment of the entire polity. This is particularly true of the Constitutional commands, representing as they do the nation's paramount source of law. It is, perhaps, not equally true in the case of statutory enactments which are the product of the legislature's best judgment at some specific time. While the question may therefore be closer when the violation is of a statute, the ultimate choice has nevertheless been the same.

A departmental regulation such as this one stands on a different footing. It has its basis in the views of the department promulgating it, and ordinarily can in no sense be said to imply the wide approval of a statute or Constitutional provision. Thus, when a balance is sought to be struck it is the desirability of promoting a departmental rather than a national policy that supports suppression of the evidence.[3] The fact that the location of the balance is a subject of heated dispute where national interests are called in question suggests that the opinion of the Postal Department furnishes tenuous justification for such a drastic remedy as suppression.

Moreover, where a statute is involved Congress is not in a very advantageous position to effectively prevent violations of the policy expressed therein; for violations normally originate from agencies outside Congress. Conversely, violations of the Postal Regulations, as in the instant case, have their origin within the Department. It is thus uniquely capable of enforcement, and the need for Court intervention is less clear. The fact that the Department chooses not to enforce the Regulation does not appreciably diminish the force of this argument. If Congress were able to effectively secure observance of their enactments, and were it to decide not to do so, an advocate of the exclusionary rule would be hard pressed to sustain it in relation to statutory violations. This is indicated by the fact that an adverse Congressional judgment on the wisdom of the exclusionary rule would presumably be decisive. Cf. Wolf v. People of State of Colorado, 1949, 338 U.S. 25, at pages 39–40, 69 S.Ct. 1359, 93 L.Ed. 1782 (Black, J., concurring).

The fact that the Regulation at issue is interpreted as a response to a Senate Committee report does not sufficiently broaden the base of the policy expressed therein to alter this conclusion. No legislation emanated from the report, and the report was not debated nor even given express approval by the Senate; it was merely forwarded to the Attorney General. Moreover, the incident that generated the report involved surveillance of a Senator's mail—a subject about which the Senate was understandably concerned. Finally, it must be remembered that the Senate is but one branch of the legislature. To rely upon the report is therefore to rest upon a slim reed indeed.

In view of what has been said the Court feels that the considerations militating against extension of the exclusionary rule have the better of the argument. Defendant, however, has called attention to several cases that stand for the proposition that valid departmental regulations have the force and effect of law. From this he concludes that they should be treated as a law would be in the instant case.

■ It seems almost too fundamental to point out that because regulations are

3. This opinion, of course, deals only with the Regulations in question. While the analysis suggested might well be applicable to others, it is not inconceivable that a given regulation could be attended by circumstances calculated to upset the balance. This might, for example, be so where a department is, in effect, authorized to legislate interstitially with regard to a specific statute. This, however, is not the case here; for the instant Regulations were promulgated pursuant to the general overall authority contained in Rev.Stat. § 161 (1875), as amended, 5 U.S.C.A. § 22 (Supp.1959), which empowers the head of each department to prescribe regulations for the conduct of that department.

said to have the force of law for one purpose does not mean they will be accorded like treatment for all purposes. Cf. United States v. Eaton, 1892, 144 U. S. 677, 688, 12 S.Ct. 764, 36 L.Ed. 591. Whether they will in a given case depends upon an assessment and critical scrutiny of the considerations relevant to the particular problem demanding solution. This has been attempted in this case with the result of convincing the Court that on balance the wiser course to pursue is to permit use of the evidence in question.

Finally, Oliver v. United States, 8 Cir., 239 F.2d 818, certiorari dismissed, 1957, 353 U.S. 952, 77 S.Ct. 865, 1 L.Ed.2d 858, is not opposed to the decision reached. There the Court utilized a combination of statutory and administrative restrictions on the right to inspect mail to suppress evidence obtained by opening a wrapped package containing heroin. However, for reasons outlined above, the injection of a statutory command creates a rather different problem than that now before the Court. Accordingly, defendant's motion will be denied.

An appropriate order will be entered.