[L. A. No. 9531. Department Two.—November 28, 1928.]

PACIFIC READY-CUT HOMES, INC. (a Corporation), Appellant, v. L. L. LAW et al., Defendants; PETER PETERSON et al., Respondents.

Andrew J. Copp, Jr., for Appellant.

L. C. Woods for Respondents.

SHENK, J.—The plaintiff, Pacific Ready-Cut Homes, Inc., brought two actions against the defendants Peter Peterson, Nora Peterson, and L. L. Law to foreclose mechanics' liens. The defendants Peterson answered and also filed a cross-complaint wherein they sought to recover from the plaintiff and its bondsman, Standard Accident Insurance Company, certain damages alleged to have been sustained by them by reason of the failure of the plaintiff to complete the construction of certain improvements on land owned by the Petersons which consists of two residence lots in the city of Los Angeles. The actions were tried together. Judgment was entered in each case in favor of the Petersons on their cross-complaint and against both cross-defendants, viz., the Pacific Ready-Cut Homes, Inc., and Standard Accident Insurance Company, in the sum of $1,675 and costs. The

plaintiff was denied the foreclosure of its alleged liens and that company is the appellant in each case. The Standard Accident Insurance Company is not appealing. The record in both cases is the same except as to the description of the lots, and the facts, which are not in dispute, are substantially as follows:

On or about the thirtieth day of January, 1924, the Petersons, as owners, entered into a contract with one L. Law, a building contractor, whereby the latter agreed to construct on each of the described lots, in accordance with certain plans and specifications, a double bungalow and garage for the contract price of $4,704. The total contract price was, therefore, $9,408. Under the contract Law agreed to accept as payment of the contract price two promissory notes in the sum of $3,750 each, secured by first mortgages on said lots, and two promissory notes in the sum of $954 each, secured by trust deeds on said lots, which trust deeds should be subordinate to the mortgages. The notes, mortgages, and trust deeds were executed by the Petersons and delivered to Law before any work was done or materials were furnished in the construction of said improvements. On February 11th, Law, while still holding the four promissory notes and said mortgages and trust deeds, proceeded to enter into two contracts, in writing, with the Pacific Ready-Cut Homes, Inc., whereby the latter would agree to construct the bungalows and garages on said lots in accordance with said plans and specifications for the stipulated price of $2,823 for each of the houses and $299 for each of the garages. The Petersons were requested by Law to consent to this arrangement but they refused to do so unless the Pacific Ready-Cut Homes, Inc., would provide security that it would construct said improvements in accordance with said plans and specifications. This the corporation agreed to do. Thereafter the Pacific Ready-Cut Homes, Inc., and Law entered into said contracts whereby the corporation agreed to and did accept from Law as full paymnt of its contract price the latter's promissory note due in ninety days and secured by the assignment to the corporation of the notes, mortgages, and trust deeds held by Law against the Petersons. On March 13, 1924, the Pacific Ready-Cut Homes, Inc., as principal, and Standard Accident Insurance Company, as surety, executed a bond binding themselves to

the Petersons as obligors in the sum of $6,000 and conditioned on the faithful performance by the principal of all of the terms and conditions of the contract between the Petersons and Law. The Pacific Ready-Cut Homes, Inc., then entered upon the performance of the construction contract and proceeded with the same until April 4, 1924, when it ceased its labor and the furnishing of any further materials. The Petersons completed the improvements as contemplated by the original contracts and it is for the cost of such completion that they were awarded damages in these actions.

On April 23, 1924, the plaintiff filed its notices of lien on each of said lots claiming the reasonable value of the work performed and the materials furnished in the construction of said improvements and in due time commenced these actions to foreclose said liens.

It further appears that when Law entered into his written contracts with the plaintiff, he represented to it that he would cause the securities then assigned to it to be negotiated within ninety days after February 11, 1924, so as to net the plaintiff the sum of $6,094 in cash; that prior to the twelfth day of May Law went to the plaintiff and stated that he had a purchaser for the Peterson notes; that the money was in escrow with the Title Insurance and Trust Company, and he requested the plaintiff to transmit the Peterson securities and the Law note to the Title Insurance and Trust Company with its instructions. The plaintiff prepared such instructions authorizing the Title Insurance and Trust Company to use the notes and collateral provided the sum of $6,094 be paid to the plaintiff. The instructions and other documents were placed in an envelope by the plaintiff and sealed. At the request of Law himself he was permitted by the plaintiff to take the envelope and its contents for delivery to the Title Insurance and Trust Company. Instead of delivering the document to the Title Insurance and Trust Company intact, as he said he would do, he removed therefrom the instructions of the plaintiff and substituted instructions directing the Title Insurance and Trust Company to pay the money to himself. The money was paid to him on or about March 24, 1924. On or about the twelfth day of April following, the plaintiff first discovered that it had been swindled by Law. It had him arrested for embezzle-

ment, but pending his preliminary hearing he was removed from the jurisdiction under the extradition law to Indiana where about forty counts of embezzlement were pending against him. Upon the discovery of the fraud the plaintiff immediately served written notice of rescission on law, the Petersons, and the Standard Accident Insurance Company, purporting to rescind all of the contracts between the plaintiff and Law and also the contract evidenced by said surety bond. The ground of the rescission was that all of said contracts with the plaintiff had been obtained through the false and fraudulent representations of Law and without any intention on his part to perform the same. The plaintiff thereafter brought an attachment suit against Law in Indiana, the efficacy of which is .questionable.

The court found, among other things, that Law had assigned his contracts with the Petersons to the plaintiff; that the plaintiff accepted the assignment thereof and as a part of the same transaction executed the surety bond in favor of the Petersons; that the plaintiff took Law's ninety-day collateral note secured by the Petersons' obligations as full payment of the contract price; that in his dealing with the plaintiff Law was not acting as the agent of the Petersons, but on the contrary dealt with the plaintiff wholly on his own behalf; that the first and only fraud appearing throughout the entire transaction was when Law obtained possession of the Peterson securities and his own promissory note and converted the proceeds thereof to his own use.

The plaintiff makes no claim and there is no showing whatever that the Petersons knew of or participated in the fraud practiced on the plaintiff by Law. The plaintiff was fully protected when it received the ninety-day note of Law secured by the assignment of the Peterson notes, mortgages and trust deeds. It was only through the plaintiff's negligence in entrusting the custody of the documents to Law that it suffered any loss.

It is insisted by the plaintiff that the record shows that at the time Law entered into the contract with it he had no intention of. performing the same and intended to get possession of the notes and other documents and convert them to his own use. Therefore, it is argued, said contract was properly rescinded and there was no foundation for the execution of the surety bond. The answer to the contention

is that when Law executed and delivered his ninety-day note and assigned the security for the same to the plaintiff, the contract had been fully executed and the plaintiff was fully protected. It was only because of the plaintiff's negligence in placing the documents in the hands of Law that it suffered any loss. The plaintiff was not obligated in any way to deliver the documents to Law and when it did so it must be held responsible for its own negligent act.

The plaintiff makes the further point that none of the construction contracts was filed for record as provided by section 1183 of the Code of Civil Procedure, and that, therefore, the Petersons are not entitled to insist upon the protection thereof. The purpose of the filing of a construction contract for record is to give notice to all persons performing work or furnishing materials on the job of the extent of the owner's liability. The position of the plaintiff herein is that of an original contractor and it, of course, must be deemed to have had notice of the contract provisions. We fail to see how the requirements of section 1183 have any applicability to the facts in this case.

The judgments are affirmed

Richards, J., and Langdon, J., concurred.

Hearing in Bank denied.

All the Justices concurred.