**UNITED STATES of America, Plaintiff,**

v.

**George Edwin BRETHAUER, Defendant.**

**No. 5750.**

United States District Court
W. D. Missouri, S. D.

March 21, 1963.

1. For an excellent discussion of the privity rule, see 1 Frumer & Friedman, Prod-

F. Russell Millin, U. S. Dist. Atty., William Kitchen, Asst. U. S. Atty., for plaintiff.

William A. Wear, Springfield, Mo., for defendant.

JOHN W. OLIVER, District Judge.

This case pends on defendant's motion to dismiss all three counts of the indictment, each of which, involving different years, is based on Section 1001 of Title 18, United States Code. Defendant contends that none of the counts allege a violation of the statute.

In support of defendant's motion it is suggested that (1) the alleged false statement, as set forth in each count of the indictment, is not a statement of "material fact", and that (2) assuming the statements involved were both false and material, they do not pertain to "any matter within the jurisdiction of any department or agency of the United States".

Section 1001 of Title 18 United States Code, provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or docu-

ucts Liability § 16.03 at 376 et seq. (1960).

ment knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

■ The Government concedes that a "material fact" must be established as an essential element of the offense. The question of whether the particular alleged misrepresentation alleged in the indictment was or was not "material" depends upon many factors that can be made apparent only by a full presentation of the entire factual situation. Such facts can not be fully presented in this case by a motion to dismiss the indictment. The first ground of defendant's motion is therefore ruled to be untenable.

In support of its second ground, defendant suggests that the leading and controlling case is Keane v. United States, 4th Cir. 1921, 272 F. 577. We do not agree.

That case reversed a conviction based upon an indictment under the then existing Section 37 of the Criminal Code (Comp.St. § 10201). The statute there involved provided:

"If two or more persons conspire either to commit any offense *against the United States,* or to defraud *the United States* in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both." (Italics ours).

The majority opinion in Keane stated that the question before it was "whether or not the post exchange mentioned in the indictment is such an institution as that a fraud upon the United States can arise from or be involved in any transaction concerning it". But, instead of judging the case on the basis of the statutory language, the majority opinion in Keane looked to language in Mr. Justice Lurton's opinion in Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569 (1910) (which it attempted to distinguish) which stated that "[t]he statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of *any department of the government*". (Italics ours again).

The majority opinion in Keane then struggled with the question of whether a post exchange was a "department of the government"; concluded that it was not; and reversed the trial court which it said had determined to the contrary.

The majority opinion in Keane also placed major reliance upon certain language in Mr. Justice Blatchford's opinion in United States v. Eaton, 144 U.S. 677, 12 S.Ct. 764, 36 L.Ed. 591 (1892). That reliance prompted defendant in this case to argue that from at least the time of the sutlers in the Civil War, post exchanges "just growed like Topsy". Defendant emphasizes that a post exchange is "a creature of regulations promulgated by the Army"; that *they are not creatures of statute";* and that "while Congress has from time to time recognized their existence it has not seen fit to enact legislation giving them statutory paternity". Again, with emphasis, defendant notes that *"there is no Act of Congress which creates or defines 'Post Exchanges' ".*

The actual thrust of defendant's argument, although that argument is spelled out in language borrowed from Keane, is that because Congress was not the father of the post exchange, it can not be said that a post exchange is "within the jurisdiction of any department or agency of the United States" within the meaning of Section 1001, Title 18 United States Code. We think defendant's reliance on Keane, and his emphasis on the absence of any Congressional paternity for a post exchange is misplaced. Congress has constitutional power to authorize the adoption and legitimization of many institutions that it may not have earlier chosen to sire.

United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911), made clear that regulations promulgated pursuant to Congressional authority may

have the force of law and that an act of Congress is not in all instances a necessary prerequisite for the establishment of a jurisdiction upon which a criminal prosecution may be lawfully predicated. And Singer v. United States, 323 U.S. 338, 344, 65 S.Ct. 282, 89 L.Ed. 285 (1944), noted that Grimaud had emphasized that Eaton turned on its special facts and that Eaton did not establish "as a principle of federal criminal law that a provision which only punishes violations of a 'law' does not cover violations of rules or regulations made in conformity with that law". See also United States v. Howard, 352 U.S. 212, 216, 77 S.Ct. 303, 1 L.Ed.2d 261 (1957), in which the Supreme Court again distinguished Eaton and held that even a violation of a State regulation could be considered as a violation of the "law of the State", within the meaning of the federal Black Bass Act which made it unlawful to transport in interstate commerce any black bass or other fish "contrary to the law of the State".

But even more important so far as any controlling effect that Keane may be said to have, we can not ignore that the statute under which the defendant is indicted in this case (18 U.S.C.A. § 1001) is infinitely more broad than old Section 37 of the earlier Criminal Code. Defendant is here indicted under a statute which relates to "any matter *within the jurisdiction* of any department or agency of the United States". Section 37 was confined to conspiracies "against *the United States*" and to efforts "to defraud *the United States.*" A study of the cases here cited convincingly demonstrates that a matter of substance, not semantics, is involved.

Whether a post exchange is or is not "within the jurisdiction of any department or agency of the United States" is dependent upon its legal status and its relationship to the United States and its established departments (see Section 6 of Title 18 U.S.C., incorporating by reference Section 1 of Title 5 U.S.C., for definition of both a "department" and an "agency" of the United States)

Standard Oil Co. of California v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611, (1942) determined that post exchanges, although their early history was somewhat confused, are now established and operated under regulations of the Secretary of War (now Defense, see 5 U.S.C.A. § 171) which, as lawfully authorized by Acts of Congress, have the force of law. That case also decided that "the establishment and control of post exchanges * * * in accordance with regulations rather than specific statutory directions does not alter their status".

It also determined that "government officers, under government regulations, handle and are responsible for all funds of the exchange" and that under the present regulations "post exchanges, as now operated are arms of the Government" and "are integral parts of the War Department". Certainly such an organization must be said to be "within the jurisdiction of" the present Department of Defense and "any matter" concerning a post exchange must be said to relate to a matter "within the jurisdiction of [a] department or agency of the United States", within the meaning of Section 1001, Title 18 United States Code. We so hold.

The enactment of Section 150k of Title 5 relating to employees of non-appropriation fund instrumentalities of the Armed Forces did not change nor did Congress in any way indicate an intention to alter the determination of the status of a post exchange made by the Supreme Court of the United States in the Standard Oil case. One of the purposes, if not the prime purpose, of that legislation was "to allay the doubts raised by the Standard Oil case, supra, as to whether or not the various Civil Service laws and regulations were applicable to civilian employees of non-appropriated fund activities". United States v. Forfari, 9th Cir. 1959, 268 F.2d 29, cert. denied 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157 (1959). See also the full Congressional history of that legislation recited on page 32 of 268 F.2d. Cf.

Rizzuto v. United States, 10th Cir. 1961, 298 F.2d 748, 749.

The cases that we have cited make it unnecessary to have any extended discussion of the interesting historical points suggested in defendant's brief. The Supreme Court considered that history fully and what it said in Standard Oil is controlling. We must therefore find and determine that the second ground of defendant's motion is not tenable.

Defendant's motion to dismiss should be and is therefore overruled. This case will be for trial when reached on the April, 1963, docket of this Court in its Southern Division at Springfield, Missouri.

It is so ordered.