UNITED STATES of America, Plaintiff,

v.

George Edwin BRETHAUER, Defendant.

No. 5750.

United States District Court
W. D. Missouri, S. D.

Oct. 9, 1963.

See also D.C., 214 F.Supp. 820.

F. Russell Millin, U. S. Dist. Atty., William A. Kitchen, Asst. U. S. Dist. Atty., Kansas City, Mo., for plaintiff.

William A. Wear, Springfield, Mo., for defendant.

**JOHN W. OLIVER, District Judge.**

There has never been any serious doubt about the basic facts in this jury waived criminal case involving an alleged violation of Section 1001 of Title 18, United States Code.

Defendant's defenses are essentially legal ones. Defendant's proposed findings of fact, for example, candidly suggest that we should find "that the profit and loss statements submitted by the defendant for all three years were false in that they set forth alleged expenditures to Hunco Sales for various merchandise purchased which were in fact not so purchased, thus increasing Defendant's expenses and decreasing his net profit".

One of defendant's basic legal positions is that under the terms of defendant's contracts, it was immaterial whether defendant was making a profit or losing money and that, therefore, he could submit false profit and loss statements so long as he correctly reported and paid on his gross receipts. Defendant has consistently argued that the terms of his contracts required only that he pay twenty-five percent of the *gross receipts* of all sales to the Post Exchange and that if the *gross receipts* were correctly reported and the required twenty-five per cent paid, it is legally immaterial that the *profit and loss* statements were false. Defendant suggests finally that "the only concern of the Exchange so far as the contract is concerned as to the *net profits* * * * was that they [the Post Exchange] might or might not have renewed the same had they known the true profit picture". On that score, defendant argues that the evidence "is highly conjectural and speculative and is not adequate to prove the defendant to be guilty of the charges beyond a reasonable doubt".

Section 1001 of Title 18, United States Code, of course, requires that the "false, fictitious or fraudulent statements or representations" must relate to a "material fact". Weinstock v. United States, 1956, 97 U.S.App.D.C. 365, 231 F.2d 699, a case relied upon by both parties, points out that the element of "[m]ateriality must

be judged by the facts and circumstances in the particular case".

"The test", Judge Prettyman held in Weinstock, "is whether the false statement has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made". Elaboration of that test is not necessary.

Freidus v. United States, 1955, 96 U.S. App.D.C. 133, 223 F.2d 598, 601, a case that ruled the quantum of evidence to be insufficient, pointed out that "[n]o perversion of a governmental function could possibly result from a false statement that was incapable of affecting or influencing such function".

If such be the fact in a particular case, it is obvious that the false statement could not be said to be "material" within the meaning of Section 1001 of Title 18, United States Code. See also Maxwell v. United States, 6 Cir.1960, 277 F.2d 481, and Gonzales v. United States, 10 Cir.1961, 286 F.2d 118, for additional examples of the application of the established rule of decision. Those cases make clear that this case, like those cited, turns on its own facts.

Defendant's testimony established beyond reasonable doubt that "[he] knew at the time [he] submitted annual Profit and Loss Statements to Fort Leonard Wood Exchange that those statements were false in that the Net Profit was understated because [he] had inflated the amount of Cost of Goods sold by the total of checks drawn payable to Hunco Sales Company". Defendant admitted that he "did not want them [the Post Exchange] to know the true amount of my Net Profits because it would raise problems".

Defendant's testimony that he did not have in mind "the possibility of an increase in the percentage of gross sales required, or possibly even the taking over and operating of the concession by the Post Exchange" (Tr. 179–180) is incredible; particularly in light of his testimony that he knew that the Post Exchange's purpose for requiring the

statements and for making an analysis of his profit and loss was "to get a correct picture of [his] operation" (Tr. 161). Defendant knew false statements would not give a correct picture; it is clear beyond any reasonable doubt that he did what he did in order that a correct picture would not be presented for review and consideration.

The testimony concerning what action the Post Exchange would have taken is not conjecture or speculation. The real thrust of Colonel Stickney's testimony is illustrated by his answer on cross-examination to the effect that "we certainly would not have gone into a new contract under the same terms if we knew he made more money than was portrayed on his certified statements" (Tr. 115).

It is, of course, clear that the very purpose of a review of accurate profit and loss statements was to enable the Post Exchange to have accurate information upon which it could predicate a fair decision and make a fair judgment. The false statements submitted by the defendant were not only capable of affecting or influencing the decisions of the Post Exchange, those statements did in fact influence its decision to renew contracts on the old basis. The perversion of governmental function is clear and the materiality of the statement here involved is clearly apparent. Proof was made beyond reasonable doubt. Any finding to the contrary would ignore the realities of all the testimony and attribute to defendant a naivete that his business experience denies.

On the issue relating to the status of the Post Exchange, we incorporate by this reference what we had to say on that subject when we overruled defendant's motion to dismiss the indictment (see United States v. Brethauer, W.D. Mo.1963, 214 F.Supp. 820).

Accordingly, and pursuant to Rule 23 (c) of the Rules of Criminal Procedure, we refuse the findings of facts and conclusions of law proposed by defendant; as the trier of the facts we have signed and file herewith a general finding and

verdict of guilty in regard to all three counts; and we do hereby make the following formal findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On August 12, 1954, defendant entered into a contract with the Fort Leonard Wood Post Exchange to operate the theatre candy, soft drinks, and popcorn concessions for the period of September 26, 1954 to September 25, 1955. This contract, as renewed from time to time, was in full force and effect from July 1, 1958 through July 1, 1960 and thereafter.

2. Article III, 2, b, of that contract provided that certified detailed balance sheets and operating statements could be required at any time by the Exchange. The Post Exchange, pursuant to that clause, did require the defendant to submit operating statements showing his cost of sales and net profit in the operation of the concession.

3. Defendant, on or about July 1, 1958, did submit an operating statement to the Post Exchange officer for the year ending June 30, 1958. Defendant's purchases were stated in the amount of $102,112.70. His net profit was stated as $10,105.68.

4. The actual purchases made by defendant for the year ending June 30, 1958, amounted to only $71,349.93. His true net profit for this period was $40,868.45.

5. In like manner, defendant, on or about July 1, 1959, submitted an operating statement to the Post Exchange officer for the year ending June 30, 1959. That statement stated that defendant's cost of sales amounted to $96,073.32, and his net profit amounted to $8,429.24.

6. The true cost of sales made by defendant for the year ending June 30, 1959, amounted to only $71,644.63 and his true net profit for this period was $32,857.93.

7. And, in like manner, defendant, on or about July 1, 1960, submitted an operating statement to the Post Ex-

change officer for the year ending June 30, 1960, in which defendant's cost of sales was stated as $84,514.78, and his net profit as $8,162.98.

8. The true cost of sales for the year ending June 30, 1960 was $48,443.73, and his true net profit for that year was $44,234.03.

9. In each of the three years involved, defendant concealed his true profit by showing fictitious purchases from the Hunco Sales Company upon his records by causing checks to be drawn upon the Brethauer Theatre concession account and depositing the same to the account of the Hunco Sales Company. During all of the time involved defendant made no actual purchases from Hunco Sales Company. Defendant was the sole owner of Hunco Sales Company throughout the periods of the indictment and the amounts deposited to that company's account were actually profit derived from the operation of the concession at Fort Leonard Wood. We find that defendant's intent and purpose of depositing checks in the Hunco Sales Company account was to conceal the amount of his true net profit from the Post Exchange.

10. We find that the Post Exchange officers used and relied upon figures of cost of sales and net profit submitted to them by all concessionaires in order that they review the operation of the particular concession involved. Such figures were regularly and routinely used to determine whether or not an attempt should be made to renegotiate the contract, and whether or not a particular contract was to be renewed. We find defendant was familiar with this regular procedure.

11. We find that defendant's submission of false figures and statements to the Post Exchange officers caused them to renew the concession contract with the defendant without seeking any change in the terms of the contract with regard to the percentage of sales to be paid to the Post Exchange.

12. We further find that had the defendant submitted the true amounts of his net profit to the Post Exchange, its officers would have initiated and required a renegotiation of defendant's contract either for lower prices, a higher commission to the Exchange, or a combination thereof; and that if no renegotiation of the contract could be agreed upon between the Post Exchange and the defendant, at the expiration or termination of the contract, the Post Exchange officer would have considered having the Post Exchange operate the concession and likely would not have renewed the contract on the same terms. At the very least, defendant's actions directly affected and influenced the manner in which the Post Exchange officers discharged their duties and responsibilities in regard to defendant's contract.

## CONCLUSIONS OF LAW

1. The Fort Leonard Wood Post Exchange is a department or agency of the United States under the terms of Section 1001, Title 18, United States Code.

2. The profit and loss statements which are the subject of the indictment were submitted to the Post Exchange officer pursuant to the requirements of the contract and therefore this is a matter within the jurisdiction of the Post Exchange under Section 1001, Title 18, United States Code.

3. The aforesaid profit and loss statements were material in that they could and did affect or influence the exercise of a governmental function.

4. The aforesaid profit and loss statements were false, fictitious and fraudulent statements under the terms of Section 1001, Title 18, United States Code.

5. Inasmuch as the defendant submitted false, fictitious and fraudulent statements of material fact to the Post Exchange, an agency or department of the United States, the judgment of the Court must be that the defendant is found guilty as charged on each count of the indictment.

The probation service of this Court will furnish the Court the usual presentence examination pursuant to Rule 32(c) of the Rules of Criminal Procedure

as soon as conveniently possible. The defendant and his counsel will thereafter be notified of the date sentence will be imposed.

It is so ordered.